SLR:RKH:KMA; 2018V00809

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

TY CLEVENGER,

                    Plaintiff,                Civil Action No. 18-CV-1568

     -against –

                                        (Bloom, M.J.)

U.S. DEPARTMENT OF JUSTICE,
FEDERAL BUREAU OF INVESTIGATION,
and NATIONAL SECURITY AGENCY,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271-A Cadman Plaza East, 7th Floor
Brooklyn, New York  11201
July 29, 2019

KATHLEEN A. MAHONEY
Assistant U.S. Attorney
     (Of Counsel)

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

PLAINTIFF'S REMAINING FOIA CLAIMS
MUST BE DISMISSED

A. The Standards for Summary Judgment in a FOIA Action. . . . . . . . . . . . . . . . . . .3

    1. The FOIA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

    2. Summary Judgment in FOIA Actions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

B. The DOJ Criminal Division, the DOJ National Security Division, and the FBI
   Properly Asserted Exemptions 6 and 7(C) to Withhold Personal Information
   in Responding to Plaintiff's Request for the "Wilkinson" Records. . . . . . . . . . . . .6

    1. FOIA Exemptions 6 and 7(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        a. FOIA Exemption 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

        b. FOIA Exemption 7(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

    2. Exemptions 6 and 7(C) Were Properly Asserted. . . . . . . . . . . . . . . . . . . . . .10

        a. The Redactions by the DOJ Criminal Division. . . . . . . . . . . . . . . . .11

        b. The Redactions by the National Security Division. . . . . . . . . . . . . .13

        c. The Redactions by the FBI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

C. The FBI Conducted an Adequate Search in Response to Plaintiff's Request
   for Records Concerning Seth Conrad Rich. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

D. The FBI Properly Responded to Plaintiff's Request Dated October 1, 2017. . . . .22

    1. The First Item in Plaintiff's Letter was Not a Valid FOIA Request. . . . . . .22

    2. Exemptions 5, 6, 7(A), 7(C), and 7(E) Were Properly Asserted
       in Responding to the Second and Third Items. . . . . . . . . . . . . . . . . . . . . . 25

i

a. FOIA Exemption 5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    i. Attorney-Client Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . .27

    ii. Attorney Work-Product Privilege. . . . . . . . . . . . . . . . . . . . .28

    iii. Deliberative Process Privilege. . . . . . . . . . . . . . . . . . . . . . .29

b. FOIA Exemptions 6 and 7(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

c. Exemptions 7(A) and 7(E). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

E. Plaintiff is Not Entitled to Any Relief With Respect to His Request to the NSA. .36

1. The NSA Did Not Improperly Withhold the Record Responsive to
Category (4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

a. The NSA Properly Asserted Exemption 1. . . . . . . . . . . . . . . . . . . . 37

b. The NSA Properly Asserted Exemption 3. . . . . . . . . . . . . . . . . . . . 42

    i. 50 U.S.C. § 3606(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

    ii. 18 U.S.C. § 798. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

    iii. 50 U.S.C. § 3024(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

2. Plaintiff Failed to Exhaust Administrative Remedies Regarding
Categories (1) Through (3) in His FOIA Request. . . . . . . . . . . . . . . . . . . 47

3. The NSA Properly Provided a "*Glomar*" Response for
Categories (1) Through (3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

## PRELIMINARY STATEMENT

Defendants United States Department of Justice ("DOJ"), Federal Bureau of Investigation ("FBI), and National Security Agency ("NSA") (collectively "Defendants") respectfully submit this memorandum of law in support of their motion pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing this action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

Plaintiff Ty Clevenger is challenging several of Defendants' responses to various FOIA requests. As shown below, Defendants properly responded to Plaintiff's FOIA requests and did not improperly withhold responsive records. Specifically, the DOJ and the FBI properly asserted FOIA Exemptions 6 and 7(C) to protect personal information, FOIA Exemption 5 to protect privileged material, and Exemptions 7(A) and 7(E) to protect information about law enforcement techniques and procedures for law enforcement investigations or prosecutions. In addition, the FBI conducted a reasonable search but did not locate any records responsive to another request, and correctly deemed one request to be overly broad and too vague to be a valid request. Further, the NSA properly asserted FOIA Exemptions 1 and 3 to withhold records responsive to one category in Plaintiff's request. Plaintiff's claims as to the other three categories of records in the request must be dismissed because Plaintiff failed to exhaust administrative remedies and, in any event, the NSA properly responded that it could neither confirm nor deny the existence of responsive records.

Accordingly, Plaintiff cannot demonstrate that he is entitled to any relief under the FOIA, and Defendants are entitled to summary judgment dismissing this action.

1

## STATEMENT OF THE CASE

On March 18, 2018, Plaintiff filed this action challenging the responses or lack of response to FOIA requests he had made to the NSA and multiple DOJ components, including the FBI. *See* Dkt. #1 (Original Complaint). Plaintiff filed a First Amended Complaint ("FAC") on June 6, 2018. Dkt. #9. After Defendants completed processing the outstanding requests,[1] Plaintiff and Defendants' counsel met and conferred to identify the responses that Plaintiff was still challenging. *See* Dkt #21 (Defendants' letter dated January 22, 2019 requesting a pre-motion conference for their contemplated motion for summary judgment). Subsequent conferring eliminated additional disputes concerning redactions.

The facts and procedural histories of the individual FOIA requests and Defendants' responses that remain at issue are set forth in detail in Defendants' Statement Pursuant to Local Civil Rule 56.1 ("Defs. 56.1"), which cross-references the Declaration of Gail Brodfeuhrer dated May 6, 2019 ("Brodfeuhrer Decl."), the Declaration of Kevin G. Tiernan dated June 7, 2019 ("Tiernan Decl."), the Declaration of David M. Hardy dated October 3, 2018 ("Hardy Decl."), the Second Declaration of David M. Hardy dated July 29, 2019 ("Second Hardy Decl."), and the Declaration of Steven E. Thompson dated June 14, 2019 ("Thompson Decl.").

Defendants incorporate by reference Defendants' 56.1 Statement and the declarations and exhibits annexed thereto.

---

[1] Defendants filed status reports on August 22, 2018 (Dkt. #15), October 9, 2018 (Dkt. #16), and November 28, 2018 (Dkt. #18).

## ARGUMENT

## PLAINTIFF'S REMAINING FOIA CLAIMS
## MUST BE DISMISSED

Defendants are entitled to summary judgment as a matter of law because Plaintiff cannot establish that he is entitled to any relief under the FOIA. Defendants properly responded to the FOIA requests, and no responsive records were improperly withheld.

**A. The Standards for Summary Judgment in a FOIA Action**

**1. The FOIA**

The FOIA requires United States government agencies to disclose agency records upon receiving a properly submitted written request for them. 5 U.S.C. § 552(a)(3)(A). However, not every agency record must be released in response to a request under the FOIA. There are nine categories of agency records that are exempted from release by 5 U.S.C. § 552(b), and three categories of records that are excluded from the FOIA by 5 U.S.C. § 552(c). Agency information that falls within the terms of the FOIA exemptions need not be disclosed. *Halpern v. Federal Bureau of Investigation*, 181 F.2d 279, 287 (2d Cir. 1999) (citations omitted); *see also John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151-52 (1989).

The FOIA authorizes courts only to enjoin an agency from improperly withholding agency records from a person who has made a proper written request for the records. 5 U.S.C. § 552(a)(4)(B); *see* 5 U.S.C. § 552(a)(3)(A) (written request requirement). A court cannot provide relief under the FOIA unless the requester demonstrates that the agency has (1) improperly (2) withheld (3) agency records that are not exempt or excluded. *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150 (1980). "Only when each of these criteria is met may a district court 'force an agency to comply with the FOIA's

3

disclosure requirements.'" *Grand Central Partnership, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (quoting *Kissinger v. Reporters Committee*, 445 U.S. at 150).

### 2. Summary Judgment in FOIA Actions

Summary judgment is the preferred procedural vehicle for resolving FOIA actions. *See, e.g., Platsky v. Food & Drug Administration,* No. 13-CV-6250 (SLT)(RLM), 2014 WL 7391611, at *3 (Dec. 24, 2014) (citation omitted), *aff'd,* 642 Fed. Appx. 63 (2d Cir. 2016); *Kaminsky v. National Aeronautics and Space Administration*, No. 08-CV-3313 (ARR)(LB), 2010 WL 276184, at *5 (E.D.N.Y. Jan. 19, 2010) (citation omitted), *aff'd,* 402 Fed. Appx. 617 (2d Cir. 2010).

A party moving for summary judgment must support its motion with facts that cannot be genuinely disputed by citing to the particular parts of the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other material. Fed. R. Civ. P. 56(c)(1). A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1986) (discussing the standard, which previously was set forth in former Rule 56(c)).

To dispute an asserted fact, the non-moving party must establish that there is a genuine dispute by citing to particular parts of materials in the record or show that the materials cited by the moving party do not establish the absence of genuine dispute or that the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1). For a fact to be material, it must affect the outcome of the action under the governing substantive law; a dispute about an irrelevant fact cannot preclude entry of summary judgment. *Anderson*, 477

U.S. at 248. A dispute of fact must also be "genuine." *Id.* at 248. This means it must be supported by evidence on which the jury could reasonably find for the non-moving party. *Id.* at 252. The mere existence of a "scintilla of evidence" in support of the non-moving party's position cannot forestall summary judgment. *Id.* at 252.

To obtain summary judgment in a FOIA action, the defendant agency must show that it conducted an adequate search for responsive records and that any withheld documents fall under a FOIA exemption or exclusion. *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994); *see Flores v. U.S. Dep't of Justice*, 15-CV-2627 (JMA) (RLM), 2016 WL 7856423, at *9 (E.D.N.Y. Oct. 4, 2016) (Report and Recommendation), *adopted* 2017 WL 238425 (E.D.N.Y. Jan. 18, 2017), *aff'd,* 712 Fed. Appx. 107 (2d Cir. 2018); *see also Minkovski v. U.S. Dep't of Treasury*, 18-CV-1034 (MKB), 2019 WL 1881083, at *3 (Apr. 27, 2019).

"A district court in a FOIA case may grant summary judgment in favor of an agency on the basis of agency affidavits if they contain *reasonable specificity* of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Grand Central Partnership*, 166 F.3d at 478 (internal quotation marks and citation omitted) (emphasis in original); *see Zhao v. U.S. Dep't of State*, 320 F. Supp. 3d 505, 509 (E.D.N.Y. 2018). "Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonable explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Carney*, 19 F.3d at 812 (footnote and citations omitted). "Affidavits submitted by an agency are accorded a presumption of good faith." *Id.* (internal quotation marks and citation omitted); *see Wilner v. National Security Agency,* 592 F.3d 60,

69 (2d Cir. 2009); *see also Kuzma v. U.S. Dep't of Justice*, 692 Fed. Appx. 30, 32 (2d Cir. 2017); *Zhao*, 320 F. Supp. 3d at 510; *Flores,* 2016 WL 7856423, at \*9.

Once the agency satisfies its burden, the plaintiff must "make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, . . . or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate." *Carney*, 19 F.3d at 812 (internal and other citations omitted); *see Anderson v. U.S. Dep't of Justice*, 326 Fed. Appx. 591, 592-93 (2d Cir. 2009); *see also Flores,* 712 Fed. Appx. at 108.

**B. The DOJ Criminal Division, the DOJ National Security Division, and the FBI Properly Asserted Exemptions 6 and 7(C) to Withhold Personal Information in Responding to Plaintiff's Request for the "Wilkinson" Records**

In a letter to multiple DOJ components including the FBI,[2] Plaintiff requested six categories of records relating to the investigation of former Secretary of State Hillary Clinton's email server and emails ("Clinton email investigation"). Defs. 56.1 ¶ 1; *see* Brodfeuhrer Decl. Ex. A; Second Hardy Decl. Ex. A. Plaintiff is challenging some of the responses regarding one of the categories – all documents and correspondence exchanged with attorney Beth Wilkinson (or any other attorney or agent working with her) regarding Cheryl Mills and Heather Samuelson. *See id.* Plaintiff is disputing the redaction of personal information by the DOJ Criminal Division, the DOJ National Security Division ("NSD"), and the FBI from the records released to him. Defendants redacted the personal information pursuant to FOIA Exemptions 6 and 7(C), 5 U.S.C. §§ 552(b)(6) and (7)(C). *See* Defs. 56.1 ¶¶ 3-4, 10-11, 15-17; Brodfeuhrer Decl. ¶ 3, Ex. C; Tiernan Decl. ¶ 6, Ex. C; Second Hardy Decl. ¶ 10, Ex. F, Ex. W.

---

[2]  Although the letter is dated March 7, 2016, it refers to and encloses correspondence from after that date. It appears that the date of Plaintiff's letter should have been March 7, 2017.

As shown below, Defendants properly asserted FOIA Exemptions 6 and 7(C).

1. **FOIA Exemptions 6 and 7(C)**

    a. **FOIA Exemption 6**

FOIA Exemption 6 exempts from disclosure information in agency personnel, medical or similar files, "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "Congress' primary purpose in enacting Exemption 6 was to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982); *see Wood v. FBI*, 432 F.3d 78, 86 (2d Cir. 2005).

In deciding whether an agency has properly withheld records pursuant to Exemption 6, the court first determines whether the records are personnel, medical, or similar files. *See Cook v. National Archives and Records Administration*, 758 F.3d 168, 174 (2d Cir. 2014). "Exemption 6 applies to any personal information contained in files similar to personnel or medical files, such as administrative investigative records." *Wood,* 432 F.3d at 86; *see also Cook,* 758 F.3d at 174 ("[A] record is a 'similar file' if it contains personal information identifiable to a particular person.").

If the record at issue falls within Exemption 6, then the court must balance the public need for the information against the individual's privacy interest to determine whether disclosure would constitute a clearly unwarranted invasion of personal privacy. *Cook,* 758 F.3d at 174, 175-76; *Long v. Office of Personnel Management*, 692 F.3d 185, 190, 193 (2d Cir. 2012); *Wood*, 432 F.3d at 87-88. The FOIA requires only a measurable interest in privacy to trigger the balancing test. *Federal Labor Relations Authority v. U.S. Dep't of Veterans Affairs*, 958 F.2d 503, 510 (2d Cir. 1992). Where public interest favoring disclosure is no more than

7

minimal, a lesser privacy interest suffices to outweigh it. *Long*, 692 F.3d at 194 (citation omitted).

"The privacy side of the balancing test is broad and encompasses all interests involving the individual's control of information concerning his or her person." *Wood,* 432 F.3d at 88 (internal quotation marks and citations omitted); *see also Long*, 692 F.3d at 195-96. "Generally, personal identifying information such as a person's name, address, phone number, date of birth, criminal history, medical history and social security number may be protected under Exemption 6*." Parker v. U.S. Dep't of Justice Executive Office for U.S. Attorneys*, 852 F. Supp. 2d 1, 12 (D.D.C. 2012) (citations omitted); *see also O'Keefe v. U.S. Dep't of Defense*, 463 F. Supp. 2d 317, 326 (E.D.N.Y. 2006) ("investigative personnel have significant privacy interests as they may be subject to harassment or embarrassment if their identities are disclosed.").

The only relevant public interest to be weighed by a court is the extent to which the disclosure will serve the core purpose of the FOIA – that is, contribute significantly to the public understanding of operations or activities of the government. *U.S. Dep't of Defense v. Federal Labor Relations Authority*, 510 U.S. 487, 495 (1994) (citation omitted); *Long*, 692 F.3d at 193; *Wood*, 432 F.3d at 88. "Goals other than opening agency action to public scrutiny are deemed unfit to be accommodated under the FOIA when they clash with privacy rights." . *FLRA v. Dep't of Veterans Affairs*, 958 F.2d at 510-11.

### b. <u>FOIA Exemption 7(C)</u>

FOIA Exemption 7(C) is broader in scope than Exemption 6, and more easily satisfied. *FLRA v. Veterans Affairs*, 958 F.2d at 50*; see U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 756 (1989). Exemption 7(C) permits an agency to

withhold records or information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Whether disclosure is warranted turns on the nature of the information and its relationship to the basic purpose of the FOIA to open agency action to the light of public scrutiny. *Dep't of Justice v. Reporters Committee,* 489 U.S. at 772 (citation omitted).

Review of the assertion of Exemption 7(C) requires first a determination that the document was compiled for law enforcement purposes and then a determination as to whether release of the material would result in the harm identified in 7(C). *See Ferguson v. Federal Bureau of Investigation*, 957 F.2d 1059, 1065 (2d Cir. 1992).

Privacy interests that may be implicated include an individual's interest in avoiding disclosure of personal matters as well as the interest in making certain kinds of important decisions. *Associated Press v. U.S. Dep't of Justice*, 554 F.3d 274, 284-85 (2d Cir. 2009) (citing *Dep't of Justice v. Reporters Committee,* 489 U.S. at 762). "It is well established that identifying information such as names, addresses, and other personal information falls within the ambit of privacy concerns under the FOIA." *Associated Press v. DOJ,* 554 F.3d at 285; *see Massey v. Federal Bureau of Investigation*, 3 F.3d 620, 624 (2d Cir. 1993) ("As we stated in *FLRA*, individuals, including government employees and officials, have privacy interests in the dissemination of their names." (citing *FLRA*, 958 F.2d at 510-11)); *see also Halpern*, 181 F.3d at 297 (finding that disclosure of the identities of law enforcement personnel was unwarranted given that disclosure could subject them to embarrassment and harassment thereby lending more weight to the individual's privacy interest over the public's interest in disclosure, and that third parties of investigative interest have an even greater privacy interest).

"Where the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish sufficient reason for the disclosure." *National Archives and Records Administration v. Favish*, 541 U.S. 157, 172 (2004); *see Associated Press v. DOJ*, 554 F.3d at 285. The requester must first establish that the public interest sought to be advanced is a significant one, and then must show the information is likely to advance that interest. *Id.*; *see Garcia v. U.S. Department of Justice, Office of Information and Privacy*, 181 F. Supp. 2d 356, 372 (S.D.N.Y. 2002) ("In order to overcome the recognized privacy interest of individuals whose name or other personally identifiable information appears in documents created in the course of a law enforcement investigation, the FOIA requestor must demonstrate that the disclosure of such information would further the goals of the FOIA." (citations omitted)).

Information unrelated to an agency's performance "falls outside the ambit of the public interest that FOIA was enacted to serve." *Reporters Committee v. Dep't of Justice*, 489 U.S. at 775; *see also Favish*, 541 U.S. at 174 ("We hold that, where there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure."); *see Associated Press v. DOJ*, 554 F. 3d at 285 (With respect to the public interest, "the Supreme Court has made clear, that there is only one relevant interest, namely, 'to open agency action to the light of public scrutiny.") (quoting *Reporters Committee v. Dep't of Justice*, 489 U.S. at 772)).

### 2. <u>Exemptions 6 and 7(C) Were Properly Asserted</u>

Defendants properly asserted FOIA Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6) and (7)(C) to protect personal information in the agency records that were released to Plaintiff in

response to his request for the correspondence with attorney Beth Wilkinson relating to the Clinton email investigation. In each instance, the redacted information falls squarely within the protections of Exemption 6 and Exemption 7(C) given to individuals' names and other identifying information found in agency investigative files. *See, e.g., Associated Press v. DOJ*, 554 F.3d at 285-93 (Exemptions 7(C) and 6, respectively, protected identifying information of Guantanamo detainees and family members from disclosure); *Halpern*, 181 F.3d at 296-97 (Exemption 7(C) protected names, initials, identifying information, and personal information of  FBI employees, other (non-FBI) government employees, non-federal law enforcement officers, persons who furnished information to the FBI, and third parties mentioned in the FBI files or were of investigative interest to the FBI); *Garcia*, 181 F. Supp. 2d at 371-74 (Holding there was no public interest in FBI special agents' names and other personal information and names, or the identities, addresses and information pertaining to third parties of investigative interest, or information about other third parties mentioned by persons interviewed, and in any event their privacy interests outweighed whatever minimal public interest might exist) (Exemption 7(C)); *see also Wood*, 432 F.3d at 88-89 (holding that disclosure of the names and identifying information of government investigators and personnel would add little to the public's understanding of how the agency performed its duties given that the existence and outcome of the investigation had been disclosed) (Exemption 6); *FLRA v. Dep't of Veterans Affairs*, 958 F.2d at 510-14 (government employees' names and addresses were protected from disclosure by Exemption 6).

### a. **The Redactions by the DOJ Criminal Division**

The responsive records are emails exchanged between a private third party (attorney Beth Wilkinson) and DOJ attorneys (including Leslie Caldwell, Assistant Attorney General

("AAG"), DOJ Criminal Division) concerning an issue related to the Clinton email investigation. *See* Brodfeuhrer Decl. ¶ 18, Ex. C. The DOJ Criminal Division redacted the following information from the seven pages that it released directly to Plaintiff:[3] AAG Caldwell's email address, telephone and cellphone numbers, and other personal information; names and email addresses of NSD attorneys; name, email address, and telephone number of a DOJ Criminal Division administrative employee; Ms. Wilkinson's cellphone number and/or email address; and telephone number of a *Washington Post* reporter. Defs. 56.1 ¶ 4; *see* Brodfeuhrer Decl. ¶ 18, Ex. C.

As an initial matter, the records were compiled for law enforcement purposes by a law enforcement agency (the DOJ Criminal Division) and are part of an agency investigative file (the Clinton email investigation). *See* Brodfeuhrer Decl. ¶ 17. Thus, they satisfy the first requirement for Exemption 6 (similar agency file) and for Exemption 7(C) (compiled for law enforcement purposes), respectively.

 With respect to the individuals' privacy interests, the government employees and non-government third parties have a measurable privacy interest in the nondisclosure of their names and/or other identifying information (email addresses, telephone and cellphone numbers). Defs. 56.1 ¶ 5; *see* Brodfeuhrer Decl. ¶ 18. Revealing personal identifying information about the DOJ employees, NSD attorneys and DOJ Criminal Division administrative employee may limit their effectiveness in conducting future investigations or expose them to annoyance or harassment. Defs. 56.1 ¶ 5; Brodfeuhrer Decl. ¶ 20. *See, e.g., Halpern* 181 F.3d at 297; *O'Keefe*, 463 F. Supp. 2d at 326. Revealing information about the private, non-government

---

[3] The DOJ Criminal Division referred an additional three pages to the DOJ NSD for review and direct response to Plaintiff. Defs. 56.1 ¶ 5.

individuals (Ms. Wilkinson and the reporter) could subject them to harassment or embarrassment, as well as undue public attention. Defs. 56.1 ¶ 5; Brodfeuhrer Decl. ¶ 20. *See Halpern* 181 F.3d at 297.

The DOJ Criminal Division weighed the more than *de minimus* privacy interests of the individuals against the public interest (the purpose of the FOIA to open agency action to the light of public scrutiny). Defs. 56.1 ¶ 5; Brodfeuhrer Decl. ¶¶ 18-21. The DOJ Criminal Division was unable to identify any cognizable public interest in disclosure of the protected information. Defs. 56.1 ¶ 6; Brodfeuhrer Decl. ¶ 19. As the Criminal Division concluded, the individuals' names, phone numbers, email addresses are not likely to give the public insight into the operations and activities of government agencies, the only public interest to be considered. *See U.S. Dep't of Defense v. FLRA* 510 U.S. at 495; *Reporters Committee v. Dep't of Justice*, 489 U.S. at 775; *Long*, 692 F.3d at 193; *Wood*, 432 F.3d at 88; *FLRA v. Dep't of Veterans Affairs*, 958 F.2d at 510-11. *See also* Defs. 56.1 ¶ 7; Brodfeuhrer Decl. ¶ 20.

The DOJ Criminal Division correctly concluded that release of the withheld personal information would constitute a clearly unwarranted invasion of the individuals' personal privacy pursuant to Exemption 6 and could reasonably be expected to constitute an unwarranted invasion of privacy pursuant to Exemption 7(C). *See* Brodfeuhrer Decl. ¶ 21.

### b. The Redactions by the National Security Division

The document at issue is a three-page email chain between DOJ attorneys (including NSD attorneys from the Counterintelligence and Export Control Section, Criminal Division AAG Caldwell, and Assistant U.S. Attorneys) and private sector outside attorneys (Beth Wilkinson and another attorney at her firm) relating to subpoenas that DOJ was about to issue for two laptops. Tiernan Decl. ¶ 7, Ex. C at 3-5. The DOJ Criminal Division referred this

13

document to the NSD for direct response to Plaintiff. *See* Defs. 56.1 ¶ 8; Tiernan Decl. ¶ 4; Brodfeuhrer Decl. ¶ 12, Ex. C. In releasing the document to Plaintiff, the NSD redacted the names and identifying information (email addresses) of NSD attorneys, who either authored or were copied on the emails. Defs. 56.1 ¶ 10; Tiernan Decl. ¶¶ 6-7, Ex. C.

The record was compiled for law enforcement purposes by a law enforcement agency and is part of the agency investigative file of the DOJ Criminal Division, which referred the record to the NSD for review and direct response. *See* Brodfeuhrer Decl. ¶¶ 12, 17. Thus, the email chain satisfies the first requirement for Exemption 6 (similar agency file) and Exemption 7(C) (compiled for law enforcement purposes), respectively.

The NSD redacted the names and other identifying information about the NSD employees who are not NSD officials at a level senior enough to have lost a cognizable privacy interest in avoiding publicity or public scrutiny in connection with their work. Defs. 56.1 ¶ 11; Tiernan Decl. ¶ 9. The release of the names and identifying information could subject the agency attorneys to harassment or intimidation and could impair their ability to continue to conduct their government duties in the future.  Defs. 56.1 ¶ 12; Tiernan Decl. ¶ 9. *See, e.g., Halpern* 181 F.3d at 297; *O'Keefe*, 463 F. Supp. 2d at 326. Failure to protect from disclosure the identities of the NSD employees who work on particular cases or matters, such as the investigation here, or the disclosure of particular activities worked on by an individual could impair the NSD's ability to staff such matters going forward. Defs. 56.1 ¶ 12; Tiernan Decl. ¶ 9.

 The NSD concluded that there was no discernable public interest in identifying the individuals. Defs. 56.1 ¶ 13; Tiernan Decl. ¶ 9. Providing their names or other identifying information would not shed light on the government's law enforcement activities or operations

14

- the only public interest to be considered. *See Dep't of Defense v. FLRA* 510 U.S. at 495; *Reporters Committee v. Dep't of Justice*, 489 U.S. at 775; *Long*, 692 F.3d at 193; *Wood*, 432 F.3d at 88; *FLRA v. Dep't of Veterans Affairs*, 958 F.2d at 510-11.

The NSD correctly concluded that release of the withheld personal information would constitute a clearly unwarranted invasion of the individuals' personal privacy pursuant to Exemption 6 and could reasonably be expected to constitute an unwarranted invasion of privacy pursuant to Exemption 7(C). *See* Tiernan Decl.¶ 9.

### c. <u>The Redactions by the FBI</u>

The ten pages of responsive records comprise emails and two letters exchanged between private attorney Beth Wilkinson and FBI General Counsel James Baker about interviews of Ms. Wilkinson's clients and the return of their laptops during the Clinton email investigation. With respect to the emails, the FBI redacted Mr. Baker's cellphone number, the names and email addresses of NSD employees who were copied on emails, and Ms. Wilkinson's cellphone number. Defs. 56.1 ¶ 17; *see* Hardy Decl. Ex. F, Ex. W. The FBI also redacted the name of a private third party mentioned in one of the letters. Defs. 56.1 ¶ 17; *see* Hardy Decl. Ex. F, Ex. W.

The Second Circuit has held that "all records of investigations compiled by the FBI are for law enforcement purposes." *Halpern*, 181 F.3d at 296; *see also Wood*, 432 F.3d at 86-87 (investigative files are "similar" agency files under Exemption 6). Thus, the FBI records at issue satisfy the first requirement for Exemption 6 (similar agency file) and Exemption 7(C) (compiled for law enforcement purposes), respectively.

The FBI determined that there were cognizable privacy interests connected to the release of the names and identifying information of each individual. Defs. 56.1 ¶ 18; Second

Hardy Decl. ¶¶ 56, 60. The FBI asserted Exemptions 6 and 7(C) to redact Mr. Baker's personal information (cellphone number) to protect him from becoming the target of harassment or otherwise being targeted. Defs. 56.1 ¶ 19; *see* Second Hardy Decl. ¶ 56, Ex. F, Ex. W. The FBI redacted the non-FBI government employees' personal information (names and email addresses) because disclosure of their personal information could subject them to unauthorized inquiries and harassment. Defs. 56.1 ¶ 19; Second Hardy Decl. ¶ 62. The FBI also redacted the name of a third party mentioned in a letter because disclosure of that identifying information could subject that individual to possible harassment, criticism, derogatory inferences, and/or suspicion. Defs. 56.1 ¶ 19; Second Hardy Decl. ¶ 63.

The FBI determined that there was no public interest to be served by the disclosure of the redacted personal information. Defs. 56.1 ¶ 20; Second Hardy Decl. ¶¶ 56, 62, 63. As the FBI concluded, disclosure of the names, email addresses, and cellphone number would not significantly increase the public's understanding of the FBI's operations and activities, which is the only public interest to be considered. *See Dep't of Defense v. FLRA* 510 U.S. at 495; *Reporters Committee v. Dep't of Justice*, 489 U.S. at 775; *Long*, 692 F.3d at 193; *Wood*, 432 F.3d at 88; *FLRA v. Dep't of Veterans Affairs*, 958 F.2d at 510-11. Thus, disclosure of the withheld personal information would cause a clearly unwarranted invasion of the individuals' privacy. Defs. 56.1 ¶ 20; *see* Second Hardy Decl. ¶¶ 54, 60, 61.

In sum, the DOJ Criminal Division, the NSD, and the FBI each properly protected personal information pursuant to Exemptions 6 and 7(C).

**C. The FBI Conducted an Adequate Search in Response to Plaintiff's Request
   for Records Concerning Seth Conrad Rich**

In a letter dated September 1, 2017, which was sent to multiple DOJ components

including the FBI, Plaintiff requested all records and correspondence pertaining to Seth Conrad

Rich, including any records or correspondence resulting from any investigation of his murder

in the District of Columbia in July 2016. Defs. 56.1 ¶ 11; *see* Hardy Decl. ¶ 5, Ex. A. Plaintiff

is challenging the FBI's response that it did not locate any responsive records.

When a FOIA plaintiff contends that the agency has improperly withheld responsive

records because it did not conduct an adequate search, the agency must show that it did. *See*

*Minkovski*, 2019 WL 1881083, at *4; *Dennis v. Alcohol, Tobacco, Firearms and Explosives,*

12-CV-3795 (JG), 12-CV-4560 (JG), 2013 WL 6579581, at *3 (E.D.N.Y. Dec. 13, 2013)

(citing *Garcia,* 181 F. Supp. 2d at 366); *Labella v. Federal Bureau of Investigation*, No. 11-

CV-0023 (NGG)(LB), 2012 WL 948567, at *7 (E.D.N.Y. Mar. 19, 2012). The factual question

raised is whether the search was reasonably designed to discover the requested records. *Grand*

*Central Partnership*, 166 F.3d at 489 (citation omitted); *see also Kuzma,* 692 Fed. Appx. at 32

(A search is adequate if it was reasonably calculated to discover the requested records).

The adequacy of the agency's search "is measured by the standard of reasonableness

and depends on the individual circumstances of each case." *Cunningham v. U.S. Department*

*of Justice*, 40 F. Supp. 3d 71, 83 (D.D.C. 2014) (citation omitted). The Second Circuit has

made clear that "an agency's search need not be perfect, but rather need only be reasonable."

*Grand Central Partnership*, 166 F.3d at 489 (citation omitted). Adequacy turns on the search

method employed and not whether the search uncovered every document extant. *Id.* "The

agency is not expected to take extraordinary measures to find the requested documents, but

17

only to conduct a search reasonably designed to identify and locate responsive records." *Garcia*, 181 F. Supp. 2d at 368 (internal quotation marks and citation omitted). "Requesters may not reduce government agencies to full-time investigators on [their] behalf." *Flores*, 2016 WL 7856423, at *9 (internal quotation marks and citation omitted). "Reasonableness does not demand perfection, and a reasonable search need not uncover every document in existence." *Kaminsky*, 2010 WL 276184, at *5 (citing *Grand Central Partnership*, 166 F.3d at 489); *see also Platsky*, 2014 WL 7391611, at *4. To be unreasonable, an agency's search must have been "patently incomplete." *Conti v. U.S. Department of Homeland Security*, No. 12 Civ. 5827 (AT), 2014 WL 1274517, at *13 (S.D.N.Y. Mar. 24, 2014) (citations omitted).

As demonstrated in the Hardy Declaration, the FBI conducted an adequate search reasonably calculated to identify and locate records responsive to Plaintiff's request for records relating to Seth Conrad Rich. The FBI Record/Information Dissemination Section ("RIDS") searched the FBI Central Records System ("CRS") for any main or reference files. Defs. 56.1 ¶ 23; Hardy Decl. ¶¶ 19-20. The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its integrated missions and functions as a law enforcement, counterterrorism, and intelligence agency. Defs. 56.1 ¶ 24; Hardy Decl. ¶¶ 11, 12. The CRS spans the entire FBI organization and encompasses the records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices worldwide. Defs. 56.1 ¶ 24; Hardy Decl. ¶ 11. The CRS is the principal records system that RIDS searches to locate information responsive to most FOIA/Privacy Act requests because the CRS is where the FBI indexes information about individuals, organizations, events, and other subjects of investigative interest for future retrieval. Defs. 56.1 ¶ 25; Hardy Decl. ¶ 21. As the systems used

to index information about, *inter alia*, individuals, for future retrieval, the CRS is the FBI recordkeeping system where investigative records responsive to Plaintiff's request are most likely to be found. Defs. 56.1 ¶ 25; Hardy Decl. ¶ 25.

In searching the CRS, the RIDS first used the Universal Index ("UNI") application of the Automated Case System ("ACS"). Defs. 56.1 ¶ 30; Hardy Decl. ¶ 19. The ACS has been the FBI's consolidated electronic, integrated case management system since 1995. Defs. 56.1 ¶ 26; Hardy Decl. ¶ 15. The UNI is the automated index of the CRS that provides all FBI offices with a centralized, electronic means of indexing pertinent investigative information for FBI files for future retrieval via index searching. Defs. 56.1 ¶ 26; Hardy Decl. ¶ 16. Using the UNI application, the RIDS conducted a three-way search of the CRS for "Seth Conrad Rich" that searched for: Seth Rich; Rich, Seth; and Seth Conrad Rich. Defs. 56.1 ¶ 30; Hardy Decl. ¶ 19 and n.5. The search did not identify any main or reference file records responsive to Plaintiff's request. Defs. 56.1 ¶ 30; Hardy Decl. ¶ 19.

The RIDS subsequently conducted a second search of the CRS using the UNI application of the ACS and using Sentinel. Defs. 56.1 ¶ 31; Hardy Decl. ¶ 20. Sentinel is the FBI's next-generation case management system that became effective FBI-wide on July 1, 2012. Defs. 56.1 ¶ 27; Hardy Decl. ¶ 17. These searches of the CRS also were conducted using a three-way search for "Seth Conrad Rich." Defs. 56.1 ¶ 31; Hardy Decl. ¶ 20. The searches did not identify any main or reference file records. Defs. 56.1 ¶ 31; Hardy Decl. ¶ 20.

If the FBI had investigated Rich or his murder, the investigative file that would have been located through the searches of the CRS. *See Blackwell v. Federal Bureau of Investigation*, 680 Fed. Supp. 2d 79, 90 (D.D.C. 2010) ("Information regarding Dr. Blackwell, the target of an FBI criminal investigation, reasonably would be found in the CRS."), *aff'd,*

19

646 F.3d 37 (D.C. Cir. 2011). However, nothing was located. *See* Defs. 56.1 ¶¶ 30-31; Hardy Decl. ¶¶ 19-20. Further, any responsive Computer Analysis and Response Team ("CART") records would have been located through the CRS searches. Defs. 56.1 ¶ 32; Hardy Decl. n.6.

Moreover, in June 2017 (prior to the receipt of Plaintiff's FOIA request), the RIDS had contacted the FBI Washington, D.C. field office ("D.C. Field Office") in regard to another request seeking records relating to Seth Conrad Rich. Defs. 56.1 ¶ 33; Hardy Decl. ¶ 22; Second Hardy Decl. ¶ 32 n.9. The D.C. Field Office informed the RIDS that it had not opened an investigation into Rich's murder, and advised that the District of Columbia Metropolitan Police Department had declined its offer to assist in their investigation. Defs. 56.1 ¶ 33; Hardy Decl. ¶ 22.

After this action was filed, because Plaintiff insisted that the FBI must have responsive records, the RIDS re-contacted the D.C. Field Office on April 4, 2018. Defs. 56.1 ¶ 36; Hardy Decl. ¶ 23. The D.C. Field Office confirmed that they had not assisted the District of Columbia Metropolitan Police Department, provided investigative or technical assistance (including CART assistance), or otherwise opened an FBI investigation into Seth Conrad Rich's murder. Defs. 56.1 ¶ 36; Hardy Decl. ¶ 23.

Thus, in attempting to locate responsive records, the FBI searched its electronic repository (the CRS) that would have identified potentially responsive information if any existed. Those efforts alone constituted a search reasonably designed to locate responsive records. "Courts have repeatedly upheld index searches of the CRS to be adequate when they are supported by detailed declarations explaining the underlying systems and the search procedures used." *Gizmodo Media Group, LLC v. Federal Bureau of Investigation*, 366 F. Supp. 3d, 585, 590 (S.D.N.Y. 2019) (citation omitted); *see Hedrick v. Federal Bureau of*

*Investigation*, 216 F. Supp. 3d 84, 93-94 (D.D.C. 2016) (Stating, where the FBI declaration contained the same background information about searching the CRS as does the Hardy Declaration in this case, that "this Court is persuaded that the FBI's index searches of the CRS using variations of Hedrick's name and identifying information about him were reasonably calculated to locate any information indexed to Hedrick, and in fact, actually encompassed the locations that Hedrick said were not searched. Therefore, the FBI's search was adequate."); *see also Blackwell*, 680 F.3d at 90 ("The Hardy Declaration indicates that the FBI conducted a good faith, reasonable search of those systems of records likely to possess the requested information."); *Garcia*, 181 F. Supp. 2d at 366-67 (The FBI declaration demonstrated that the agency conducted an adequate search where it searched the CRS). Further, the FBI contacted the D.C. Field Office, the FBI office that could have been expected to be involved in or assist with the investigation.

Once an agency shows that its search was adequate, the burden shifts to the plaintiff to "make a showing of bad faith sufficient to impugn the agency's showing." *Platsky*, 2014 WL 7391611, at *3 (citation omitted); *see also Anderson,* 326 Fed. Appx. at 592-93; *Kaminsky*, 2010 WL 276184, at *5 (citing *Carney*, 19 F.3d at 812). The presumption of good faith to be accorded to the Hardy Declaration cannot be rebutted by purely speculative claims about the existence and discoverability of other documents. *Grand Central Partnership*, 166 F.3d at 489; *see Schwarz v. Department of Justice*, 417 Fed. Appx. 102 (2d Cir. 2011). Speculation and unsupported belief that responsive records must exist, without more, will not establish that the agency did not conduct reasonable searches or impugn the agency declarations. *See Dennis*, 2013 WL 6579581, at *4; *Labella*, 2012 WL 948567, at *7 (citing *Carney*, 19 F.3d at 813); *Kaminsky*, 2010 WL 276184, at *5 (citation omitted); *see also Kuzma*, 692 Fed. Appx. at 32; *Schwarz,* 417 Fed. Appx. at 102.

In conclusion, the FBI conducted an adequate search reasonably designed to locate responsive records, and did not improperly withhold records from Plaintiff.

**D. The FBI Properly Responded to Plaintiff's Request Dated October 1, 2017**

Plaintiff is challenging the FBI's responses regarding all three categories of records requested in his letter dated October 1, 2017. *See* Defs. 56.1 ¶ 37; Second Hardy Decl. ¶ 16, Ex. H. However, as shown below, the FBI properly found that the first item was not a valid FOIA request. Further, regarding the other two items, after consultation with other DOJ agencies, the FBI released the responsive records and properly either withheld pages or redacted information based on FOIA Exemptions 5, 6, 7(C), and 7(A) and 7(E).

**1. The First Item in Plaintiff's Letter was Not a Valid FOIA Request**

The first request in Plaintiff's letter was for "Since January 1, 2010, all NDAs between the FBI and any other government entity that prohibit the release of information to Congress, any of its agencies or any Freedom of Information Act requestors." Defs. 56.1 ¶ 39; *see* Second Hardy Decl. Ex. H. The FBI responded that this request for all nondisclosure agreements ("NDAs") was overly broad and vague and lacked sufficient detail to enable agency personnel to locate records with a reasonable amount of effort, and closed the request. Defs. 56.1 ¶ 40; *see* Second Hardy Decl. ¶ 22, Ex. N. As explained below, because Plaintiff did not submit a valid FOIA request, he failed to exhaust administrative remedies. Accordingly, Plaintiff's claims relating to this request must be dismissed.

The FOIA requires an agency to make records available when the agency receives a request for records that "reasonably describes such records" and is made in accordance with the agency's published rules stating, *inter alia*, the procedures to be followed. 5 U.S.C. § 552(a)(3). *See Davis v. Federal Bureau of Investigation*, 767 F. Supp. 2d 201, 204 (D.D.C.

22

2011) (An agency's disclosure obligations under the FOIA are not triggered until it receives a request that complies with its published requirements); *see also National Security Counselors v. Central Intelligence Agency*, 898 F. Supp. 2d 233, 279  (D.D.C. 2012) ("Many courts have recognized that an agency's disclosure duties under the FOIA are not triggered until a proper FOIA request is submitted.") (citations omitted).

      As a general rule, a FOIA plaintiff must exhaust his administrative remedies before seeking relief from the federal courts. *See, e.g., Dettmann v. U.S Department of Justice*, 802 F.2d 1472, 1476 (D.C. Cir. 1986). Where a FOIA requester fails to reasonably describe the records sought, the requester has failed to submit a proper request and, therefore, failed to exhausted administrative remedies such that summary judgment in favor of the agency is appropriate. *Pinson v. U.S. Dep't of Justice*, 70 F. Supp. 3d 111, 118 (D.D.C. 2014); *see MacLeod v. U.S. Dep't of Homeland Security*, No. 15-cv-1792 (KBJ), 2017 WL 4220398, at *12 (D.D.C. Sept. 21, 2017) ("The agency is right to assert that a plaintiff who has not presented a reasonably specific request for documents, in violation of that agency's own FOIA regulations, can also be conceived of as having failed to exhaust administrative remedies prior to bringing suit." (citations omitted)); *Judicial Watch, Inc. v. Federal Bureau of Investigation*, No. 00-745 (TFH), 2001 WL 35612541 *12 (D.D.C. April 20, 2001) ("A FOIA requester is deemed to have failed to exhaust administrative remedies whenever the requester does not comply with the administrative process set forth under the FOIA, including . . . failure to reasonably describe the records being sought")*; see also Latham v. U.S. Dep't of Justice*, 658 F. Supp. 2d 155, 161 (D.D.C. 2009) (Request that sought all agency records that pertain to the plaintiff was overly broad, did not reasonably describe the records sought, and, therefore, was not a proper FOIA request); *Sussman v. U.S. Dep't of Justice,* No. 03-CV-3618 (DRH) (ETB),

2006 WL 2850608, at *9-*10 (E.D.N.Y Sept. 30, 2006) (dismissing claims relating to vague FOIA requests that did not comply with agency regulations).

The FBI regulations require that a FOIA request describe the records sought in sufficient detail to enable agency personnel to locate them with a reasonable of effort. 28 C.F.R. § 16.3(b). "An agency need not honor a request that requires 'an unreasonably burdensome search.'" *American Federation of Government Employees, Local 2782 v. U.S. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990) (quoting *Goland v. Central Intelligence Agency*, 607 F.2d 339, 353 (D.C. Cir. 1978)).

In this case, the FBI advised Plaintiff that his request was overbroad and vague and lacked sufficient detail for agency personnel to locate records with a reasonable amount of effort as the information Plaintiff sought is not of a type searchable via CRS indices. Defs. 56.1 ¶ 40; Second Hardy Decl. Ex. N. As discussed above at 18-19, the CRS is an extensive agency-wide system of records in which files are organized according to designated subject categories, and allows FBI personnel to adequately and reasonably locate pertinent files. *See* Defs. 56.1 ¶¶ 24-29; Hardy Decl. ¶¶ 11-14. The FBI concluded that it could not conduct a search using the CRS that would be reasonably calculated to identify and locate records responsive to Plaintiff's ill-defined request. Defs. 56.1 ¶ 40; Hardy Decl. ¶ 22. However, the FBI informed Plaintiff that he could resubmit his request with more narrowed and detailed information, such as identifying specific records or agreements with specific dates, that would enable the FBI to locate the materials. Defs. 56.1 ¶ 40; Hardy Decl. Ex. N. Nevertheless, Plaintiff did not attempt to refine his request; rather, he filed an appeal. Defs. 56.1 ¶ 41.

Plaintiff did not submit a valid FOIA request and, therefore, he failed to exhaust administrative remedies. Thus, Plaintiff's claims relating to his request for all NDAs must be dismissed.

### 2. Exemptions 5, 6, 7(A), 7(C), and 7(E) Were Properly Asserted in Responding to the Second and Third Items

The second category of records Plaintiff requested was all records, documents, correspondence, or other materials sent to Senator Grassley or his representatives in response to the Senator's September 25, 2017 letter to FBI Director Christopher Wray. Defs. 56.1 ¶ 42; Second Hardy Decl. ¶ 16, Ex. N. The third category was all emails, printed correspondence or other records indicating who was involved in drafting the NDA or NDAs referenced in Senator Grassley's September 29, 2017 letter. Defs. 56.1 ¶ 43; Second Hardy Decl. ¶ 16, Ex. H.

In responding to these requests, the FBI meticulously reviewed each document and consulted originating agencies to determine whether information was protected from disclosure. Of the 236 pages of records responsive to the second category, the FBI released 234 pages in full or part and withheld two pages in their entireties; the redactions and withholdings were pursuant to FOIA Exemptions 5, 6, 7(A), 7(C), and 7(E), 5 U.S.C. §§ 552(b)(5), (6), (7)(A), (7)(C), and (7)(E). Defs. 56.1 ¶¶ 44-45, 48; *see* Second Hardy Decl. ¶¶ 27-18, 31 and Ex. R, Ex. S, Ex. T, Ex. V, Ex. W. Of the 50 pages of records responsive to the third category, the FBI released 42 pages in full or in part and withheld eight pages in their entireties; the redactions and withholdings were pursuant to FOIA Exemptions 5, 6, 7(C), and 7(E), 5 U.S.C. §§ 552(b)(5), (6), (7)(C), and (7)(E). Defs. 56.1 ¶¶ 44, 47, 48; *see* Second Hardy Decl. ¶¶ 27, 30, 31 and Ex. R, Ex. U, Ex. V, Ex. W.

All of these exemptions were properly asserted.

a. **FOIA Exemption 5**

FOIA Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 encompasses the traditional discovery privileges, including the attorney-client, work-product and deliberative process privileges. *American Civil Liberties Union v. National Security Agency*, 925 F.3d 576, 589 (2d Cir. 2019) ("*ACLU v. NSA*"); *Wood*, 432 F.3d at 83 (2d Cir. 2005) (citations omitted); *see Dep't of the Interior v. Klamath Water Users Protective Association*, 532 U.S. 1, 8 (2001). Exemption 5 covers all documents that fall within a generally recognized evidentiary privilege, even if a litigant might be able to gain access to the document in discovery by showing a substantial need, and the exemption precludes their "routine disclosure" under the FOIA. *U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 13 (1988); *Federal Trade Commission v. Grolier, Inc.,* 462 U.S. 19, 26-27 (1983).

Here, Exemption 5 was asserted to redact statements about legal advice and internal discussions concerning an FBI investigation (the Clinton email investigation) from two transcripts of interviews of FBI employees conducted as part of an investigation by the Office of Special Counsel ("OSC") into allegations that FBI Director James Comey violated the Hatch Act when he made public announcements concerning the FBI's investigation into former Secretary Clinton's use of a personal email server ("the OSC investigation") that were responsive to the second category in Plaintiff's FOIA request. Defs. 56.1 ¶¶ 49-55; *see* Hardy Decl. Ex. V, Ex. W. Exemption 5 was also asserted to redact text from emails regarding drafting of NDA agreements relating to the OSC investigation that were exchanged between FBI Office of the General Counsel ("OGC") and the Executive Office of United States

Attorneys ("EOUSA") OGC and to withhold eight pages (four two-page documents) in their entireties that were responsive to the third category in Plaintiff's request. Defs. 56.1 ¶¶ 49-55; *see* Hardy Decl. Ex. V, Ex. W. In each instance, Exemption 5 was properly asserted to protect privileged information.

### i. Attorney-Client Privilege

The Supreme Court has recognized the attorney-client privilege as "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (citation omitted). The privilege absolutely protects confidential communications between client and attorney made for the purpose of obtaining or providing legal assistance. *ACLU v. NSA*, 925 F.3d at 589. The purpose of the privilege is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. *Id.* The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client. *Upjohn Co.*, 449 U.S. at 389. "In the context of legal advice to government officials, the privilege furthers a culture in which consultation with government lawyers is accepted as a normal, desirable, and even indispensable part of conducting public business." *ACLU v. NSA,* 925 F.3d at 589 (internal quotation marks and citation omitted).

Here, the FBI asserted FOIA Exemption 5 to protect privileged attorney-client discussions in the OSC interview transcripts between and among FBI counsel and FBI client employees. Defs. 56.1 ¶ 53; Second Hardy Decl. ¶¶ 47-48, Ex. V, Ex. W. In addition, at the EOUSA's request, FOIA Exemption 5 was asserted to protect privileged attorney-client communications in the emails relating to the NDA between the EOUSA OGC and the FBI.

Defs. 56.1 ¶ 55; Second Hardy Decl. ¶ 73. These are precisely the types of communications that are afforded absolute protection by the attorney-client privilege – written communications (the emails) and discussions of communications (in the transcripts) between agency counsel and agency employee clients relating to the seeking and provision of legal advice. Accordingly, Exemption 5 was properly asserted to withhold the privileged material.

## ii. **Attorney Work-Product Privilege**

The FBI asserted FOIA Exemption 5 to protect attorney work product in the emails about the NDA. Defs. 56.1 ¶ 53; *see* Second Hardy Decl. ¶¶ 44-46, Ex. V, Ex. W. The work-product privilege is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, which states in relevant part:

> **Trial Preparation: Materials.**
>
> (A) *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, . . .). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> > (i) they are otherwise discoverable under Rule 26(b)(1); and
> > (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3).

The primary purpose of the work-product privilege is to allow the client and the attorney, while preparing for litigation, to put into writing legal analyses, tactics and other

material free of the chilling prospect that these documents would be freely accessible to others. *Hickman v. Taylor*, 329 U.S. 495, 511 (1947); *see United States v. Adlman,* 134 F.3d 1194, 1196 (2d Cir. 1998) ("The work product doctrine, codified for federal courts in Fed. R. Civ. P. 26(b)(3), is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategies with an eye toward litigation, free from unnecessary intrusion by his adversaries.") (internal quotation marks and citation omitted).

Documents that contain the subjective thoughts (the mental impressions, conclusions, opinions, or legal theories) of a party's attorney or other representative are granted absolute immunity from discovery. *See Upjohn Co*., 449 U.S. at 400 (discussing the special protection given to an attorney's mental processes); *Adlman*, 134 F.3d at 1196. All other documents prepared in the course of litigation by either a party or his representative are entitled to a qualified immunity, which may be overcome only by a strong showing of a substantial need for the documents and the absence of any other source from which the equivalent materials can be obtained without undue hardship. Fed. R. Civ. P. 26(b)(3)(ii).

The emails at issue here concerned the drafting of the NDA for the OSC investigation. *See* Defs. 56.1 ¶ 53; Second Hardy Decl. Ex. V. The emails contain the attorneys' subjective thoughts, including opinions and suggestions regarding the wording of the NDA, and other discussions concerning the NDA. Defs. 56.1 ¶ 50; *see* Second Hardy Decl. ¶ 46, Ex. V, Ex. W. The portions of the emails redacted pursuant to Exemption 5 fall squarely within its protection as they contain attorney work product.

### iii. Deliberative Process Privilege

The FBI asserted FOIA Exemption 5 on its own behalf and at the request of the OIP acting on behalf of the Office of the Deputy Attorney General ("ODAG") to protect

deliberative process material in the OSC interview transcripts. Defs. 56.1 ¶ 51; *see* Second Hardy Decl. ¶¶ 42, 71-73. FOIA Exemption 5 was also asserted to protect deliberative process material in the emails concerning the NDA exchanged between the FBI and the EOUSA OGC. Defs. 56.1 ¶ 49; Second Hardy Decl. ¶ 41, 75, Ex. V, Ex. W.

The deliberative process privilege protects pre-decisional and deliberative documents that reflect "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *National Labor Relations Board v. Sears*, 421 U.S. 132, 150 (1975) (citation omitted); *see Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002). The deliberative process privilege

> has a number of purposes: it serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting  reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

In this case, the deliberative process privilege was asserted in conjunction with FOIA Exemption 5 to protect information reflecting the decision making processes of the FBI, alone or in conjunction with other DOJ components. Defs. 56.1 ¶¶ 50-52; *see* Second Hardy Decl. ¶ 41-43, 71-73, 75. The email redactions encompass an ongoing dialogue among and between FBI employees and other Government personnel about preliminary versions about what might later become a final document reflecting an agency policy or decision, or might never be more than a draft of something that was never approved in final form. Defs. 56.1 ¶ 50; *see* Second Hardy Decl. ¶ 41. The redacted portions of the OSC interview transcripts recount a decision

30

making process involving the FBI employee being interviewed and employees of the ODAG and the FBI. Defs. 56.1 ¶ 51; *see* Second Hardy Decl. ¶ 71-73.

Thus, disclosure of the redacted material in both the emails and the OSC transcripts would reveal pre-decisional formulation of opinions, advice, deliberations, proposals, and recommendations. Disclosure of the redacted material would have an inhibiting effect on agency decision making and development of policy. Defs. 56.1 ¶ 52; Second Hardy Decl. ¶ 43. Agency employees would no longer feel free to discuss their ideas, strategies, and advice for fear that this type of information might regularly be released to the public. Defs. 56.1 ¶ 52; Second Hardy Decl. ¶ 43. Agency employees would become reticent to share their opinions and circumspect in their willingness to engage in internal discussions, and their hesitance to offer their candid and conscientious opinions would harm and self-censorship would, in turn, degrade the quality of agency decisions by depriving decision makers of fully explored options developed from robust debate. Defs. 56.1 ¶ 52; *see* Second Hardy Decl. ¶ 42.

The withheld materials are protected from disclosure by the deliberative process privilege.

### b. FOIA Exemptions 6 and 7(C)

The legal standards governing Exemptions 6 and 7(C), 5 U.S.C. §§ 552(b)(6) and 7)(C) are set forth above at 7-10. In responding to the two requests, the FBI properly asserted Exemptions 6 and 7(C) to redact personal information about FBI and other Government employees, as well as third parties, from the transcripts of interviews of two FBI employees during the OSC investigation and from the NDA-related emails.

The FBI asserted FOIA Exemptions 6 and 7(c) to protect the names, identifying information, email addresses and personal cellphone numbers of FBI special agents, FBI

professional staff, non-FBI government personnel, and third parties contained in the emails concerning the NDA and in the OSC interview transcripts. Defs. 56.1 ¶ 56; Second Hardy Decl. ¶¶ 53-65, Ex. V, Ex. W.

The FBI determined that there were cognizable privacy interests connected to the release of the redacted names, identifying information, and other personal information of the FBI special agents and FBI professional staff. Defs. 56.1 ¶ 57;  Second Hardy Decl. ¶ 58. The FBI identified potential harms that could result from the release of the personal information, including the FBI agents and personnel becoming the targets of harassing inquiries for unauthorized access to information regarding investigations and having their effectiveness in other investigations seriously prejudiced. Defs. 56.1 ¶ 57; Second Hardy Decl. ¶¶ 58-60. Also, the individuals could be subjected to unofficial questioning about their assistance rendered in matters such as the NDA or the OSC investigation or their conduct in other investigations and/or legal matters regardless of whether they are currently employed by the FBI. Defs. 56.1 ¶ 57; Second Hardy Decl. ¶ 59. *See, e.g., Halpern* 181 F.3d at 297; *O'Keefe*, 463 F. Supp. 2d at 326.

The FBI also determined that non-FBI Government personnel have cognizable privacy interests connected to the disclosure of their names, email addresses, and identifying information. Defs. 56.1 ¶ 59; Second Hardy Decl. ¶ 62. The potential harms that could result from the release of this personal information include subjecting these individuals to unauthorized inquiries and harassment. Defs. 56.1 ¶ 59; Second Hardy Decl. ¶ 62. *See, e.g., Halpern* 181 F.3d at 297; *O'Keefe*, 463 F. Supp. 2d at 326.

Additionally, the FBI determined that there were cognizable privacy interests connected to the release of the names, personal cellphone numbers, and other identifying

information (including email address) of third parties mentioned in the investigatory records. Defs. 56.1 ¶ 59; Second Hardy Decl. ¶ 63. The potential harms that could result from the release of that personal information include extremely negative connotations caused by their association with an FBI investigation, which could subject them to possible harassment, criticism, derogatory inferences, and suspicion. Defs. 56.1 ¶ 59; Second Hardy Decl. ¶ 63. *See, e.g., Halpern* 181 F.3d at 297.

The FBI also considered the public interest and concluded that there was no public interest to be served by the disclosure of the redacted personal information for any of the three groups of individuals because the information would not significantly increase the public's understanding of the FBI's operations and activities, which is the only relevant public interest to be weighed by a court. Defs. 56.1 ¶ 60; Second Hardy Decl. ¶¶ 56, 61, 62, 63. *See U.S. Dep't of Defense v. FLRA* 510 U.S. at 495; *Reporters Committee v. Dep't of Justice*, 489 U.S. at 775; *Long*, 692 F.3d at 193; *Wood*, 432 F.3d at 88; *FLRA v. Dep't of Veterans Affairs*, 958 F.2d at 510-11.

The FBI correctly concluded that disclosure of the redacted personal identifying information for any of these individuals would result in a clearly unwarranted invasion of privacy that outweighs the public interest in disclosure. See Defs. 56.1 ¶ 61.

c. **Exemptions 7(A) and 7(E)**

The FBI is continuing to assert Exemption 7(A) in conjunction with Exemption 7(E) to withhold information about techniques and procedures for law enforcement investigations or prosecutions used in ongoing investigations that are sensitive law enforcement information. Defs. 56.1 ¶ 63; Second Hardy Decl. ¶¶ 49-52, 67-79, Ex. V, Ex. W.

33

Exemption 7(A) authorizes an agency responding to a properly submitted FOIA request to withhold records or information to the extent that the production of such law enforcement records or information "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Exemption 7(A) prevents harm to the government's case by not allowing litigants earlier or greater access to agency investigatory files than they would otherwise have. *See National Labor Relations Board v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224-25 (1978). Exemption 7(A) applies to law enforcement records compiled for civil, administrative, and criminal matters. *Stein v. U.S. Securities and Exchange Commission*, 266 F. Supp. 3d 326, 343 (D.D.C. 2017); *see Radcliffe v. Internal Revenue Service*, 536 F. Supp. 2d 423, 435-36 (S.D.N.Y. 2008), *aff'd*, 328 F. Appx. 699 (2d Cir. 2009); *see also Pope v. United States*, 599 F.2d 1383, 1386 (5th Cir. 1979) (collecting cases). Moreover, Exemption 7(A) does not require a presently pending enforcement proceeding. *See Center for National Security Studies v. U.S. Department of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003).

Exemption 7(E) protects from disclosure information compiled for law enforcement purposes where the release of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). *See Allard K. Lowenstein International Human Rights Project v. Dep't of Homeland Security*, 626 F.3d 678 (2d Cir. 2010). Even commonly known procedures may be protected from disclosure if their disclosure could reduce or nullify their effectiveness. *See Vazquez v. U.S. Dep't of Justice,* 887 F. Supp. 2d 114, 116-17 (D.D.C. 2012).

The FBI is asserting Exemption 7(E) to protect information in the OSC transcripts about the FBI's size and composition of units and divisions, including number of personnel. Defs. 56.1 ¶ 63; Second Hardy Decl. ¶ 67, Ex. V, Ex. W. If this non-public information were released, criminals or adversaries could use it to deduce the amount of resources the FBI is dedicating to particular areas or types of operations, scout non-public FBI joint locations, gain insight on the FBI's capabilities in a certain region, ascertain where the FBI has a less robust presence, and organize their illicit activities to exploit that information and circumvent the law in subject areas or geographic locations where the FBI has less presence or fewer resources. Defs. 56.1 ¶ 63; Second Hardy Decl. ¶ 67.

The FBI also is asserting Exemption 7(E) to protect information about the focus of a specific FBI investigation. Defs. 56.1 ¶ 64; Second Hardy Decl. ¶ 68, Ex. V, Ex. W. Disclosure of this information would reveal the scope of the FBI's programs and strategies that it intends to pursue in preventing and disrupting criminal activity, and enable criminals to gauge the FBI's strengths and weaknesses in certain areas, structure their activities to avoid detection and disruption by the FBI, and circumvent the law. Defs. 56.1 ¶ 65; Second Hardy Decl. ¶ 68.

The FBI also is asserting Exemption 7(E) to protect law enforcement techniques and procedures that it uses to collect and analyze information in connection with both criminal and national security investigations. Defs. 56.1 ¶ 65; Second Hardy Decl. ¶ 69, Ex. V, Ex. W. Although these techniques may be known in a general sense, the technical analysis, including the specifics of how and in what setting they are employed, is not known to the public. Defs. 56.1 ¶ 65; Second Hardy Decl. ¶ 69. Disclosure of the redacted information would reveal the identity of methods used in collecting and analyzing information, including how the FBI collects information and where it collects it from, as well as the methodologies employed to

35

analyze information collected. *Id.* Disclosure of this information would enable subjects of investigations to circumvent similar and currently used techniques, by permitting accumulation of information by investigative subjects about the circumstances under which specific techniques were used or requested to collect certain information, how the information is analyzed, and the usefulness of the information obtained. *Id.* Disclosure of the information would enable criminals and terrorists to educate themselves on techniques employed by the FBI in collecting and analyzing information, thereby allowing them to take countermeasures to circumvent the effectiveness of these techniques. *Id.*

The FBI also asserted Exemption 7(E) to protect sensitive information about investigative methods used by the FBI in conducting both criminal and national security investigations. Defs. 56.1 ¶ 66; Second Hardy Decl. ¶ 70, Ex. V, Ex. W. Disclosure of information about these methods and their use would highlight the types of activities, facts, or occurrences that are of particular interest to the FBI in these investigations, and disclosure of investigative methods, analysis of information gleaned from the methods or any other sort of details would reveal the kinds of information the FBI is interested in capturing. Defs. 56.1 ¶ 66; Second Hardy Decl. ¶ 70. As a result, individuals would have the opportunity to employ countermeasures to circumvent detection or alter behavior. *Id.*

In conclusion, the FBI properly asserted Exemptions 7(A) and 7(E) because disclosure of the information could reasonably be expected to risk circumvention of the law.

## E. Plaintiff is Not Entitled to Any Relief With Respect to His Request to the NSA

Plaintiff is challenging the NSA's responses to his letter dated October 10, 2017, which sought four categories of records, designated as (1) through (4). *See* Defs. 56.1 ¶¶ 67-71; Thompson Decl. Ex. A. As discussed below, the NSA properly asserted FOIA Exemptions 1

and 3 to withhold the records responsive to category (4). As to categories (1) through (3), Plaintiff failed to exhaust administrative remedies with respect to the NSA's response, and, therefore, any claims relating to these requests should be dismissed.[4] In any event, the NSA properly responded that it could neither confirm nor deny the existence of responsive records in these categories.

The NSA has not improperly withheld responsive records, and is entitled to summary judgment dismissing Plaintiff's claims relating to his FOIA request to the NSA.

### 1. The NSA Did Not Improperly Withhold the Records Responsive to Category (4)

Plaintiff is challenging the NSA's assertion of Exemptions 1 and 3 to withhold the fifteen records (totaling 32 pages) responsive to his request for the agency's correspondence with Congress (or anyone representing a member of Congress or Congressional committee) regarding Seth Rich, Julian Assange, Wikileaks, Kim Dotcom, Aaron Rich, Shawn Lucas, Kelsey Mulka, Imran Awan, Abid Awan, Jamal Awan, Hina Alvi, and/or Rao Abbas. *See* Defs. 56.1 ¶ 71; Thompson Decl. Ex. A (request), E (response). As shown below, both Exemptions were properly asserted to withhold the responsive records.

### a. The NSA Properly Asserted Exemption 1

The NSA withheld the documents pursuant to FOIA Exemption 1 because they are classified as either TOP SECRET or SECRET in accordance with Executive Order 13526 (Classified National Security Information). Defs. 56.1 ¶ 80; Thompson Decl. ¶¶ 34-36, Ex. E.

---

[4] These three categories of records in the request were not set forth in the First Amended Complaint.

FOIA Exemption 1 exempts from disclosure matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). *See Center for Constitutional Rights v. Central Intelligence Agency*, 765 F.3d 161, 166 (2d Cir. 2014); *Halpern*, 181 F.3d at 289. An agency's decision to withhold information is reviewed under the Executive Order upon which the classification determination was made. *Halpern*, 181 F.3d at 289 (citations omitted).

In the national security context, the court must accord substantial weight to the agency's declaration concerning the details of the classified status of the disputed record or information. *American Civil Liberties Union v. Dep't of Justice*, 681 F.3d 61, 69, 70-71 (2d Cir. 2012) (citations omitted); *see Wilner*, 592 F.3d at 76 ("Recognizing the relative competencies of the executive and judiciary, we believe that it is bad law and bad policy to second-guess the predictive judgments made by the government's intelligence agencies.") (internal quotation marks and citation omitted); *see also Halpern*, 181 F.3d at 292; *Diamond v. Federal Bureau of Investigation*, 707 F.2d 75, 79 (2d Cir. 1983) (citations omitted).

The NSA is a separate agency within the Department of Defense that was established by Presidential Directive in 1952. Thompson Decl. ¶ 5. The NSA is responsible for communications security and "signals intelligence" activities of the United States. *Id.*; *see also Winter v. National Security Agency/Central Security Service*, 569 F. Supp. 545, 547 (S.D. Cal. 1983). The NSA has two primary missions: (1) to collect, process, analyze, produce, and disseminate signals intelligence ("SIGINT") information for foreign intelligence and counterintelligence purposes to provide support for national and departmental requirements and for the conducting of military operations; and (2) to conduct information assurance

38

(cybersecurity) activities. Defs. 56.1 ¶ 72; Thompson Decl. ¶ 5. In performing its first mission (the SIGINT mission), the NSA exploits foreign signals to obtain intelligence necessary to the national defense, national security, and/or the conduct of foreign affairs. Defs. 56.1 ¶ 73; Thompson Decl. ¶ 6. SIGINT information that is provided to senior Government officials, intelligence agencies, and/or the military in a classified setting is relevant to a wide range of issues including, but not limited to, military order of battle, threat warnings and readiness, arms proliferation, terrorism, and foreign aspects of international narcotics trafficking. Defs. 56.1 ¶ 73; Thompson Decl. ¶ 7.

The NSA's ability to produce SIGINT depends on its access to foreign signals, and public disclosure of either the capability to collect specific signals or the substance of the SIGINT information can easily alert foreign adversaries to the vulnerabilities of their signals. Defs. 56.1 ¶ 74; Thompson Decl. ¶ 8. SIGINT capabilities are both expensive and fragile. *Id.*

Communications intelligence ("COMINT") is a subset of SIGINT information obtained from intercepted foreign communications. Defs. 56.1 ¶ 75; Thompson Decl. ¶ 9. A fundamental tenet of the COMINT process is that the identity of specific communicants whose communications are intercepted (commonly referred to as "targets"), the degree of success in exploiting targets, and the vulnerabilities of particular foreign communications are matters that must be maintained in strictest secrecy because the ability to exploit foreign communications is fragile. *Id.* Disclosure of any of these matters would encourage countermeasures by the targets of the NSA's COMINT efforts. *Id.* Disclosure of even a single intercepted communication could potentially reveal the intelligence collection activities applied against targets around the world. Defs. 56.1 ¶ 76; Thompson Decl. ¶ 9. If adversaries were aware of the NSA's activities and capabilities, they would likely change their communications methods

to evade collection, which would undermine the NSA's entire mission. Defs. 56.1 ¶ 76; Thompson Decl. ¶ 9; *see* Thompson Decl. ¶ 36. COMINT targets could change how they communicate, which could inhibit access to their communications and, consequently, deny the United States access to information crucial to its defense. Defs. 56.1 ¶ 76; Thompson Decl. ¶ 9. Such a loss of information would be extremely harmful to the national security of the United States. *Id.*

In response to Plaintiff's FOIA request, the NSA withheld the records under Exemption 1 based on Executive Order No. 13526 of December 29, 2009, Classified National Security Information, 75 Fed. Reg. 707 (Jan. 5, 2010), 2009 WL 6066991 (Pres.). *See* Defs. 56.1 ¶ 80; Thompson Decl. ¶¶ 33-34, Ex. E. Section 1.4 of Executive Order 13526 provides that information "shall not be considered for classification unless its unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security in accordance with section 1.2" and it pertains to one or more of the following:

> (a) military plans, weapons systems, or operations;
> (b) foreign government information;
> (c) intelligence activities (including covert action), intelligence sources or methods, or cryptology;
> (d) foreign relations or foreign activities of the United States, including confidential sources;
> (e) scientific, technological, or economic matters relating to the national security;
> (f) United States Government programs for safeguarding nuclear materials or facilities;
> (g) vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security; or
> (h) the development, production, or use of weapons of mass destruction.

Exec. Order 13526 § 1.4. Section 1.2 sets forth the three levels at which information may classified under the Executive Order. Two of these levels are relevant here: TOP SECRET,

which "shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause exceptionally grave damage to the national security that the original classification authority is able to identify or describe;" and SECRET, which "shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security that the original classification authority is able to identify or describe." Exec. Order 13526 § 1.2(a)(1)-(2).

Steven E. Thompson, NSA Chief of Policy, Information, Performance, and Exports, who has a TOP SECRET original classification authority, has provided a declaration supporting the NSA's assertion of FOIA Exemption 1 based on Executive Order 13526 to withhold the fifteen responsive records. *See* Thompson Decl. ¶¶ 1-3. Thompson states that the documents are classified as either TOP SECRET or SECRET in accordance with Executive Order 13526. Defs. 56.1 ¶ 82; Thompson Decl. ¶¶ 34-36, Ex. E. Further, many of the documents have additional dissemination control markings indicating the sensitivity of the material. Thompson Decl. ¶ 35 n.7. For example, many are marked "NOFORN" to indicate that the information may not be released to foreign governments, foreign nationals, or non-U.S. citizens without the permission of the originator and in accordance with Director of National Intelligence policy. *Id.*

The unauthorized disclosure of the documents reasonably could be expected to damage the national security and identifies the damage that could result from disclosure. All of the withheld records, which are communications between Congress and the NSA, relate to classified intelligence matters and the NSA's mission and activities. Defs. 56.1 ¶ 82; Thompson Decl. ¶¶ 35-36. All of the withheld records are currently and properly classified as either TOP SECRET or SECRET in accordance with Section 1.4 of Executive Order 13526.

41

*Id.* Release of these records would cause exceptionally grave damage or serious damage (depending on the classification level) to the NSA's mission, including but not limited to intelligence activities.[5] Defs. 56.1 ¶ 82; Thompson Decl. ¶ 35.

The NSA has demonstrated that the withheld documents meet criteria in Section 1.4 of Executive Order 13526, and that they remain classified as TOP SECRET or SECRET as provided in Section 1.2 of the Executive Order. Thus, the documents are exempt from disclosure under FOIA Exemption 1, and the NSA properly withheld them in responding to Plaintiff's FOIA request.

### b. The NSA Properly Asserted Exemption 3

Exemption 3 exempts from disclosure matters that are that specifically exempted from disclosure by statute (other than the Privacy Act) if the statute affords the agency no discretion on disclosure, or establishes particular criteria for withholding information or refers to the particular types of materials to be withheld.[6] 5 U.S.C. § 552(b)(3); *see Central Intelligence Agency v. Sims*, 471 U.S. 159, 167-68 (1985); *ACLU v Dep't of Justice*, 681 F.3d at 72; *Wilner*, 592 F.3d at 71. In addressing an agency's claim that Exemption 3 applies, the court first must determine whether the statute cited by the agency is a withholding statute and then whether the withheld information satisfies the requirements of that statute. *See Sims*, 471 U.S. at 167; *Roman v. National Security Agency*, No. 07-CV-4501 (JFB) (WDW), 2009 WL 303686, at *5 (E.D.NY. Feb. 9, 2009), *aff'd*, 354 Fed. Appx. 591 (2d Cir. 2009).

---

[5] Thompson also determined that there was no meaningfully segregable non-classified information in the records. Thompson Decl. ¶ 35.

[6] There is an additional requirement, not applicable here, that if the statute was enacted after October 28, 2009 (enactment of the OPEN FOIA Act of 2009), it specifically cites to Exemption 3. 5 U.S.C. § 552(b)(3)(B).

In asserting FOIA Exemption 3 to withhold the responsive records -- communications between Congress and the NSA relating to classified intelligence matters, some of which implicate intelligence sources and methods, -- the NSA identified three statutes that prohibited disclosure: Section 6 of Pub. L. 86-36 (National Security Act of 1959), 18 U.S.C. § 798; and 50 U.S.C. § 3024(i).  Defs. 56.1 ¶ 83; Thompson Decl. Ex. E; *see* Thompson Decl. ¶ 39. These statutes recognize the vulnerability of intelligence, specifically SIGINT, to countermeasures of a foreign power or terrorist party, as well as the significance to national policymakers, combatant commanders, and the intelligence community of the loss of valuable foreign intelligence information. Each statute standing alone provides a basis for withholding of the documents pursuant to Exemption 3.

### i. <u>50 U.S.C. § 3605(a)</u>

As is relevant here, Section 6 of the National Security Agency Act of 1959 ("NSAA"), codified at 50 U.S.C. Chapter 47,[7] provides that "nothing in this chapter or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof, or of the names, titles, salaries, or number of the persons employed by such agency." 50 U.S.C. § 3605(a) ("Section 6 of the NSAA"). The Second Circuit has held that "the language of Section 6 makes quite clear that it falls within the scope of Exemption 3." *Wilner*, 592 F.3d at 72; *see Roman v. NSA*, 2009 WL 303686, at *5 ("[I]t is well established that FOIA Exemption 3 properly encompasses Section 6 of the NSAA.") (citations omitted); *see also Linder v. National Security Agency*, 94 F.3d 693, 698 (D.C. Cir. 1996) ("The protection afforded by

---

[7]  formerly codified in a note under 50 U.S.C. § 402.

section 6 is, by its very terms, absolute. If a document is covered by section 6, the NSA is entitled to withhold it regardless of the requesting party's needs.").

"The NSA is not required to show harm to national security under Section 6, but need only demonstrate that the withheld information relates to the organization of the NSA or any function or activities of the agency." *Larson v. Dep't of State*, 565 F.3d 857, 868 (D.C. Cir. 2009). "Congress's broad language in Section 6 of the NSAA eases the burden for the agency, as it exempts from disclosure any 'information with respect to the activities' of that agency." *Wilner*, 592 F.3d at 75 (*citing* Pub. L. No. 86-36, § 6). Section 6 of the NSAA "forbids disclosure of information relating to the NSA's SIGINT activities." *People for the American Way Foundation v. National Security Agency/Central Security Service,* 462 F. Supp. 2d 21, 31 (D.D.C. 2006)  (*citing Linder*, 94 F.3d at 696); *Hayden v. National Security Agency/Central Security Service*, 608 F. 2d 1381, 1389 (D.D.C. 1979) ("release of the documents would disclose a function of the NSA, since signals intelligence is one of the Agency's primary functions, and would disclose information with respect to Agency activities, since any information about an intercepted communication concerns an NSA activity.").

The documents withheld by the NSA fall squarely within the protection of Section 6 of the NSAA (codified at 50 U.S.C. § 3605(a)). The documents are communications between the NSA and Congress relating to classified intelligence matters and concern the NSA's involvement in intelligence activities, which implicate both the NSA's core functions and activities (*i.e.,* SIGINT activities), as well as intelligence sources and methods. Thus, the NSA determined that disclosure of the documents of the documents is prohibited by 50 U.S.C. § 3605(a), and correctly asserted Exemption 3.

### ii. **18 U.S.C. § 798**

Title 18 U.S.C. § 798 criminalizes the unauthorized disclosure of classified information, including classified information concerning the communication intelligence activities of the United States or any foreign government, and classified information obtained "by the processes of communication intelligence from the communications of any foreign government, knowing the same to have been obtained by such processes." 18 U.S.C. § 798(a)(3)-(4). Anyone who "knowingly and willfully communicates, furnishes, transmits, or otherwise makes available to an unauthorized person, or publishes, or uses in any manner prejudicial to the safety or interest of the United States or for the benefit of any foreign government detrimental to the United States" such classified information "[s]hall be fined under this title or imprisoned not more than ten years, or both." 18 U.S.C. § 798(a). The statute defines classified information as "information which, at the time of a violation of this section, is, for reasons of national security, specifically designated by a United States Government Agency for limited or restricted dissemination or distribution." 18 U.S.C. § 798(b). In addition, the statute defines communication intelligence as "all procedures and methods used in the interception of communications and obtaining of information from such communications by other than the intended recipients." *Id.*

Thus, 18 U.S.C. § 798 requires that particular types of matters be withheld from the public, and qualifies as a withholding statute under Exemption 3. *See Willis v. National Security Agency*, No. 17-cv-2038 (KBJ), 2019 WL 1924249, at *8 (D.D.C. Apr. 30, 2019) (Stating with respect to*, inter alia*, 18 U.S.C. § 798, "[i]t is well established that each of these statutes qualifies as an Exemption 3 withholding statute").

The documents at issue are properly and currently classified as TOP SECRET and/or SECRET in accordance with Section 1.4 of Executive Order 13526. Defs. 56.1 ¶¶ 81-82; Thompson Decl. ¶ 35; *see supra* at 41-42. Disclosure of the withheld information about intelligence sources and methods would reveal critical information about the communication intelligence activities of the United States. *See* Thompson Decl. ¶ 41. Accordingly, release of the documents is prohibited by, and would be subject to criminal penalties under, 18 U.S.C. § 798. Therefore, the NSA correctly determined that the documents were exempt from disclosure under Exemption 3 based on 18 U.S.C. § 798.

### iii. <u>50 U.S.C. § 3024(i)</u>

The third statute, Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004, authorizes the Director of National Intelligence to protect intelligence sources and methods from unauthorized disclosure. 50 U.S.C. § 3024(i) ("Section 3024(i)"). Section 3024(i) qualifies as an Exemption 3 statute. *See Larson*, 565 F.3d at 868; *see also DiBacco v. U.S. Army*, 795 F.3d 178, 197 (D.C. Cir. 2015) ("DiBacco does not dispute, nor could she, that Section 3024(i)(1) is a valid Exemption 3 statute." (*citing Sims*, 471 U.S. at 167)); *Leopold v. Central Intelligence Agency*, 380 F. Supp. 3d 14, 17 (D.D.C. 2019) ("multiple courts in this circuit have recognized that the National Security Act is an exemption statute for purposes of Exemption 3."). Section 3024(i) "instructs the Director of National Intelligence to protect intelligence sources and methods from unauthorized disclosure, regardless of classification." *Larson,* 565 F.3d at 868.

The Director of National Intelligence has delegated enforcement of the mandate in Section 3024(i) to the heads of the seventeen agencies that constitute the "Intelligence Community." *See Cable News Network, Inc. v. Federal Bureau of Investigation,* Civ. No. 17-

1167 (JEB), 2019 WL 2408644, at *5 (D.D.C. 2019). As a member of the Intelligence Community, the NSA must protect intelligence sources and methods. *See* Thompson Decl. ¶ 42.

Here, the withheld documents relate to classified intelligence matters and implicate intelligence sources and methods. Defs. 56.1 ¶¶ 81-82; Thompson Decl. ¶¶ 35, 39, 42. "Courts have recognized that [Section 3024(i)'s] protection of sources and methods is a 'near-blanket FOIA exemption.'" *Cable News Network,* 2019 WL 2408644, at *5.

Accordingly, the NSA properly asserted Exemption 3 because the records are protected from disclosure is prohibited by 50 U.S.C. § 3024(i).

### 2. Plaintiff Failed to Exhaust Administrative Remedies Regarding Categories (1) Through (3) in His FOIA Request

"It goes without saying that exhaustion of remedies is required in FOIA cases." *Dettmann*, 802 F.2d at 1476; *see Oglesby v. U.S. Department of the Army*, 920 F.2d 57, 64 (D.C. Cir. 1990) ("once the agency responds to the FOIA request, the requester must exhaust his administrative remedies before seeking judicial review."); *see also Wilber v. Central Intelligence Agency*, 355 F.3d 675, 676-77 (D.C. Cir. 2004); *Hidalgo v. FBI*, 344 F.3d 1256, 1258-59 (D.C. Cir. 2003). The burden is on the FOIA plaintiff to prove that he exhausted administrative remedies. *See Roman v. National Reconnaissance Office*, 952 F. Supp. 2d 159, 165 (D.D.C. 2013).

In relevant part, the FOIA states:

Each agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall --

\*\*\*

47

> (ii) make a determination with respect to any appeal within
> twenty days (excepting Saturdays, Sundays, and legal public
> holidays) after the receipt of such appeal. If on appeal the denial
> of the request for records is in whole or in part upheld, the agency
> shall notify the person making such request of the provisions for
> judicial review of that determination under paragraph (4) of this
> subsection.

5 U.S.C. § 552(a)(6)(A). In addition to establishing deadlines for agency responses to FOIA

requests and appeals, this section of the FOIA contains the requirement that the requester

appeal an adverse decision. *See Oglesby,* 920 F.2d at 64 ("Section 552(a)(6)(A) provides for

an administrative appeal where an agency's determination is adverse; judicial review of that

determination is available after the agency determination has been upheld in the administrative

appeal."); *see also Hidalgo*, 344 F.3d at 1259 ("As we have previously concluded, this

statutory scheme requires each requestor to exhaust administrative remedies.") (citation and

internal quotation marks omitted).

A FOIA requestor is deemed to have failed to exhausted administrative remedies where

he did not administratively appeal a decision. *Judicial Watch v. FBI*, 2001 WL 35612541, at

*12. A court may dismiss a FOIA case if the plaintiff failed to exhaust administrative remedies.

*Porter v. Central Intelligence Agency*, 778 F. Supp. 2d 60, 68 (D.D.C. 2011); *see Robert VII*

*v. Department of Justice*, 193 Fed. Appx. 8, 9 (2d Cir. 2006) (affirming dismissal of claims

related to request as to which the plaintiff did not file an administrative appeal before filing

suit); *see also MacLeod,* 2017 WL 4220398, at *11 (dismissing a claim where the plaintiff had

failed to appeal an agency's *Glomar* response); *Bida v. Russo*, No. 14-CV-104 (RRM)(LB),

2014 WL 1392338, at *2 (E.D.N.Y. Apr. 9, 2014) ("To withstand dismissal, a FOIA plaintiff

must plead in his complaint that he has exhausted his administrative remedies.") (citations

omitted); *Judicial Watch v. FBI*, 2001 WL 35612541, at *12 ("Where a FOIA plaintiff attempts

48

to obtain judicial review without first properly undertaking full administrative exhaustion, his lawsuit is subject to immediate dismissal").

In this case, the NSA responded to the portion of Plaintiff's FOIA request for records in categories (1) through (3) by letter dated November 7, 2017. Defs. 56.1 ¶ 77; Thompson Decl. ¶ 12, Ex. B. The NSA's response expressly informed Plaintiff that he could appeal the decision, provided information about how to submit an appeal, and told him that an appeal must be submitted within ninety (90) days. Defs. 56.1 ¶ 79; Thompson Decl. Ex. B. Nevertheless, Plaintiff did not file an appeal. Defs. 56.1 ¶ 79; Thompson Decl. ¶ 12. Consequently, Plaintiff did not exhaust administrative remedies before filing this action on March 18, 2018. Thus, any claims related to categories (1) through (3) in his FOIA request must be dismissed.

### 3. The NSA Properly Provided a "*Glomar*" Response for Categories (1) Through (3)

In any event, the NSA did not improperly withhold records responsive to categories (1) through (3). Those portions of the FOIA request sought (1) all documents, records, or communications between Seth Rich and Julian Assange, Wikileaks, Kim Dotcom, Aaron Rich, Shawn Lucas, Kelsey Mulka, Imran Awan, Abid Awan, Jamal Awan, Hina Alvi, Rao Abbas, and/or any person or entity outside of the United States; (2) all documents or records (including audio recordings) of phone calls made or received by Seth Rich on July 9, 2016 and on July 10, 2016; and (3) all documents, records, or communications referencing or containing financial transactions between Seth Rich and Julian Assange, Wikileaks, Kim Dotcom, Aaron Rich, Shawn Lucas, Kelsey Mulka, Imran Awan, Abid Awan, Jamal Awan, Hina Alvi, Rao Abbas, and/or any person or entity outside of the United States. Defs. 56.1 ¶¶ 68-70;

Thompson Decl. Ex. A. The NSA interpreted the request as seeking intelligence information, and responded that the fact of the existence or non-existence of the requested materials is a currently and properly classified matter and is specifically protected from disclosure. Thompson Decl. ¶ 16. Citing FOIA Exemptions 1 and 3, 5 U.S.C. §§ 552(b)(1) and (3), the NSA responded that it could neither confirm nor deny the existence of responsive record. Defs. 56.1 ¶ 77; *see* Thompson Decl. ¶ 12,  Ex. B.

      The Second Circuit has held that an agency is permitted to assert FOIA exemptions through a "*Glomar* response," in which it refuses to confirm or deny the existence of records, if the FOIA exemption itself would preclude even the acknowledgment of the existence of responsive records.[8] *Wilner,* 592 F.3d at 67-68; *see also Wolf v. Central Intelligence Agency*, 473 F.3d 370, 374 (D.C. Cir. 2007) (A *Glomar* response "is proper if the fact of the existence or nonexistence of agency records falls within a FOIA exemption"); *Gardels v. Central Intelligence Agency*, 689 F.2d 1100 (D.C. Cir. 1982) ("an agency may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under an FOIA exception."). "To properly employ the *Glomar* response to a FOIA request, an agency must 'tether' its refusal to respond, . . ., to one of the nine FOIA exemptions." *Wilner*, 592 F.3d at 68 (citations omitted). The agency has the burden of proving the applicability of an exemption. *Id.* at 68. "In evaluating an agency's Glomar response, a court must accord substantial weight to the agency's affidavits." *Id.* at 73 (internal quotation marks and citation omitted).

---

[8]  The term "*Glomar* response" is derived from *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976), in which a FOIA requester sought records related to efforts to prevent the media from reporting on the activities of a vessel named the *Hughes Glomar Explorer*.

In this case, the NSA could not acknowledge the existence or nonexistence of responsive records because a response would reveal information that is currently and properly classified in accordance with Executive Order 13526 and is protected from disclosure by statute. Defs. 56.1 ¶¶ 77-78; Thompson Decl. ¶¶ 16-17, 18-20. As discussed below, the NSA's *Glomar* response was appropriately tethered to Exemption 1, as well as to Exemption 3.

With respect to the NSA's assertion of Exemption 1, confirming the existence or nonexistence of the responsive records would disclose information that is currently and properly classified pursuant to Section 1.1(4) of Executive Order 13526. Defs. 56.1 ¶ 77; Thompson Decl. ¶¶ 18-19. The NSA must use a *Glomar* response consistently in all cases where the existence or nonexistence of records is a classified fact, even in cases in which it does not possess responsive records. Thompson Decl. ¶ 23. In such situations, disclosure of whether or not the NSA has records or information could reasonably be expected to harm national security because it would reveal the NSA's capabilities, activities, and intelligence priorities, which in turn could inhibit SIGINT collection and affect the NSA's ability to counter threats to the national security of the United States. Thompson Decl. ¶ 20. Acknowledging the existence or nonexistence of responsive records about particular individuals or organizations that may be subject to surveillance would provide adversaries with critical information about the NSA's capabilities, such as the types of communications that may be susceptible to NSA detection. *Id.* ¶ 21.

Moreover, acknowledging the nonexistence of information could confirm that a person's activities are not of foreign intelligence interest or that the NSA is unsuccessful in collecting foreign intelligence information on that person's activities. Thompson Decl. ¶ 21. That information, on a case-by-case basis would allow adversaries to accumulate information

51

and draw conclusions about the NSA's technical capabilities, sources, and methods. *Id.* Over time, the accumulation of information would allow adversaries to draw inferences about who is and is not a target, and would disclose sources and methods relating to the NSA's SIGINT activities and functions. *Id.* Putting together information, adversaries could ascertain the degree to which the NSA is aware of some of their operatives or is able to successfully exploit particular communications. *See Sims,* 471 U.S. at 178 ("the very nature of the intelligence apparatus of any country is to try to find out the concerns of others; bits and pieces of data may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself.") (internal quotation marks and citation omitted); *Larson*, 565 F.3d at 864 ("Minor details of intelligence information may reveal more information than their apparent insignificance suggests, because, much like a piece of a jigsaw puzzle, [every detail] may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself."). Ultimately, the compilation of disclosed information could reasonably be expected to cause exceptionally grave and irreparable damage to the national security by providing the United States' adversaries with a road map as to which communication modes or personnel remain safe or are successfully defeating the NSA's capabilities. Thompson Decl. ¶ 21.

The NSA has plausibly explained the damage that could result if the NSA were to confirm or deny the existence of responsive records. Accordingly, its *Glomar* response based on Exemption 1 should be upheld. *See, e.g. Wolf*, 473 F.3d at 375-77;

Further, the NSA also properly relied on Exemption 3 in its *Glomar* response. The existence or nonexistence of the requested intelligence information is protected from disclosure by statute. The same three statutes discussed above at 43-47 (50 U.S.C. § 3605, 18

U.S.C. § 798, and 50 U.S.C. § 3024) are also applicable to the fact of the existence or nonexistence of records responsive to the first three categories in Plaintiff's request. *See* Thompson Decl. ¶¶ 26-32. Moreover, two of these statutes (50 U.S.C. § 3605 and 50 U.S.C. § 3024) protect the information regardless of whether it is classified because it relates to the NSA's activities. The NSA properly provided a *Glomar* response based on Exemption 3. *See Wilner*, 592 F.3d at 75 (Information indicating whether the NSA was targeting a specific individual would be information with respect to the activities of the NSA and, therefore, exempt under the FOIA); *Wolf*, 473 F.3d at 378 (The agency declaration "detailing of harm satisfies the requirements of Exemption 1 and, coupled with the greater deference afforded the Agency under the National Security Act, we believe the CIA also properly invoked Exemption 3 in support of its *Glomar* response.").

In conclusion, Defendants did not improperly withhold responsive records. Accordingly, Plaintiff is not entitled to any relief under the FOIA, and this action should be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion for summary

judgment and dismiss this action.

Dated: Brooklyn, New York
       July 29, 2019

                                        Respectfully submitted,

                                        RICHARD P. DONOGHUE
                                        UNITED STATES ATTORNEY
                                        Eastern District of New York
                                        Attorney for Defendants
                                        271-A Cadman Plaza East, 7th Floor
                                        Brooklyn, New York  112101
                                        (718) 254-6026/6498


s/*Kathleen A. Mahoney*
KATHLEEN A. MAHONEY
Assistant U.S. Attorney
       (Of Counsel)