UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| TY CLEVENGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 1:18-cv-01568-WFK-LB |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| JUSTICE, *ET AL.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>SECOND DECLARATION OF DAVID M. HARDY</u>

I, David M. Hardy, declare as follows:

(1)     I am the Section Chief of the Record/Information Dissemination Section

("RIDS"), Information Management Division ("IMD"),[1] Federal Bureau of Investigation

("FBI"), in Winchester, Virginia.  My first declaration in this matter, dated October 3, 2018

explains my employment history, responsibilities at the FBI, and hereby supplements and

incorporates by reference, the information previously provided in my first declaration ("First

Hardy Decl.).  *See* ECF No. 16-1.

(2)     The statements contained in this declaration are based on my personal knowledge,

upon information provided to me in my official capacity, and upon conclusions and

determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to Plaintiff's request for information from its files pursuant to the

---

[1] In May 2018, the name of IMD was changed from the Records Management Division
("RMD").

provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. §552a. Specifically, I am aware of the FBI's handling of Plaintiff's requests seeking generally, Beth Wilkinson letters to FBI (June 10, 2016); Congressional correspondence regarding e-mail server investigation; records concerning Seth Conrad Rich (deceased); Senator Grassley's letter to Director Wray concerning a non-disclosure agreement; records regarding the drafting of a non-disclosure agreement referenced in Senator Grassley's September 25, 2017 letter; and all non-disclosure agreements between the FBI and other government entities preventing the release of information to FOIA requesters (January 1, 2010 - Present).

(4)     Plaintiff is challenging the FBI's search for records concerning Seth Conrad Rich, specific FBI determinations on various FOIA requests,[2] and Other Government Agency ("OGA") responses. *See* ECF No. 21.

(5)     In response to the challenged portions of Plaintiff's requests, the FBI processed a total of 296 pages. Of these pages, 178 pages were released in full, 109 pages were released in part, and 9 pages were withheld in full. In accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this declaration is being submitted in support of Defendant FBI's Motion for Summary Judgment, in order to provide the Court and Plaintiff with an explanation of the FBI's record-keeping system; the procedures used to search for, review, and process the responsive records; and the FBI's justification for withholding records in full or in part pursuant to FOIA Exemptions 5, 6, 7(A), 7(C), and 7(E), 5 U.S.C. §§ 552 (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), and (b)(7)(E).

---

[2] FOIA Request Nos. 1369076-000 (January 12, 2018 release), 1371504-000 (certain records provided to FBI by Department of Justice, Office of Information Policy), 1384180-000 (September 19, 2017 no record response), 1386556-000 (October 9, 2018 and December 12, 2018 releases), 1398016-000 (October 9, 2018 and November 9, 2018 releases) and NFP-91785 (March 13, 2018 to broad response).

## ADMINISTRATIVE HISTORY OF CHALLENGED FOIA REQUESTS

### A.  March 8, 2017 FOIA Request – Request Nos. 1369076-000 and 1371504-000

(6)      By eFOIA request dated March 8, 2017, Plaintiff submitted a five-part request to

the FBI requesting an opportunity to view the June 10, 2016 letters described in the October 5,

2017 letter to Attorney General Loretta Lynch, as well as the following:

> Part 1: All other documents and correspondence exchanged between (1) the
> Department of Justice or any component (including the FBI) and (2) Beth
> Wilkinson (or any other attorney or agent working with her) regarding Cheryl
> Mills and Heather Samuelson.
>
> Part 2: All documents and correspondence that were exchanged between (1) the
> Department of justice or any component (including the FBI) and (2) Congress (or
> any of its committees) regarding any investigation Hillary Rodham Clinton's
> emails or email system.  This request includes, but is not limited to, documents
> and correspondence exchanged between the Department and Congress regarding
> whether David Kendall, Cheryl Mills, and/or Heather Samuelson mishandled or
> destroyed Mrs. Clinton's emails.
>
> Parts 3-5 of Plaintiff's March 8, 2017 request are not being challenged.

In addition, Plaintiff requested expedited processing and waiver of fees associated with his

request.  (*See* **Exhibit A.**)

(7)      By letter dated March 17, 2017, the FBI acknowledged receipt of Plaintiff's FOIA

request and assigned it Request Number 1369076-000.  The FBI advised Plaintiff for

administrative tracking purposes, additional FOIA numbers may be assigned if it is determined

his request seeks records about multiple subjects.  The FBI also advised Plaintiff his request for a

fee waiver was being considered; he was categorized a general (all other) requester for fee

purposes; and if his fee waiver was denied, he would be charged applicable search and

duplication fees in accordance with 5 U.S.C. § 552(a)(4)(A)(ii)(III).  Plaintiff's request for

expedited processing was denied.  Finally, Plaintiff was advised of his right to appeal the FBI's

response determination by writing to the U.S. Department of Justice ("DOJ"), Office of Information Policy ("OIP"), within ninety (90) days from the date of this letter, or seek dispute resolution services by contacting the Office of Government Information Services ("OGIS"), by telephone or by email at ogis@nara.gov. (*See* **Exhibit B**.)

(8)     By letter dated April 18, 2017, the FBI advised Plaintiff that additional administrative tracking numbers were assigned to his request.  Part 1 of his request was assigned Request No. 1369076-000 and Part 2 of his request was assigned Request No. 1371504-000. The FBI further advised Plaintiff he could check the status of his requests, or provide questions as to any FBI determinations, at www.fbi.gov/foia.  Finally, Plaintiff was advised of his right to appeal the FBI's response determination by writing to the OIP, within ninety (90) days from the date of this letter, or seek dispute resolution services by contacting the OGIS, by telephone or by email at ogis@nara.gov. (*See* **Exhibit C**.)

(9)     By emails dated October 5-6, 2017, Plaintiff advised he received the FBI's April 18, 2017 letter and asked when he could expect to receive responses to the FOIA requests identified therein.  The FBI's IMD, Public Information Officer ("PIO") advised Plaintiff Request Nos. 1369076-000 and 1371504-000 "...are presently in Initial Processing, where the assigned analyst is searching for, retrieving and reviewing potentially responsive records.  If appropriate, correspondence regarding the request and search results will be forthcoming."  He was provided information concerning the FBI's multi-track processing system, an estimated date of completion, and where to check the online status of his requests. (*See* **Exhibit D**.)

(10)     By letter dated January 12, 2018, the FBI made its first interim release of records to Plaintiff in response to Request No. 1369076-000.  The FBI advised Plaintiff it reviewed 10 pages and 10 pages were being released in full or in part, with certain information withheld

pursuant to FOIA Exemptions (b)(6) and (b)(7)(C).  The FBI further advised Plaintiff he could:
1) visit the www.fbi.gov/foia website under "Contact Us" for questions regarding the FBI's
determination; 2) appeal the FBI's decision by submitting an appeal, by mail or online with OIP,
within ninety days from the date of the letter; or 3) seek dispute resolution services by contacting
the Office of Government Information Services ("OGIS") by telephone or by emailing
ogis@nara.gov.  The FBI also advised it was unnecessary to adjudicate his fee waiver request.
Finally, the FBI advised Plaintiff additional records responsive to his request may exist within
the Hillary Clinton email server investigation file being processed.  Plaintiff would be notified by
separate correspondence if any such responsive material was posted to the Vault.  Plaintiff's
request would remain open while monthly releases were placed on the Vault.  (*See* **Exhibit E**.)

(11)    By letters dated April 30 and August 17, 2018, the FBI made additional releases
to the Plaintiff.  They are not being challenged.

(12)    On or about September 25, 2018, the FBI received from OIP for review and
consultation, documents that contained FBI equities and/or information.[3]

(13)    The FBI reviewed and processed the consulted records and provided its response
to OIP on November 14, 2018, identifying all FBI information to be withheld therein and citing
all applicable FOIA Exemptions.[4]

(14)    By letter dated July 23, 2019, the FBI provided Plaintiff a supplemental release in
response to Request No. 1369076-000.  This supplemental release provided Plaintiff with a
Bates-numbered and coded version of the records previously released to him, along with

---

[3] Several of the records received for the FBI's review and marking, already contained black
boxes covering portions of text (excised) within the record.  The excised text, was not made
pursuant to the FOIA.  Therefore, these portions of information are not at issue in this case.

[4] Pursuant to Subsections (b)(6), (b)(7)(A), (b)(7)(C) and (b)(7)(E) of Title 5, United States Code
Section 552.

additional segregable portions of information on Bates-numbered pages FBI 18-cv-01568 287-290.  (*See* **Exhibit F**.)

### B.  FOIA Request regarding Seth Rich – Request No. 1384180-000

(15)    The history of FOIPA Request Number 1384180-000, is set forth in my First Hardy Declaration and will not be recounted herein verbatim.  *See* First Hardy Declaration, ECF No. 16-1, ¶¶ 5-9.  A courtesy copy of my first Declaration is attached.  (*See* **Exhibit G**.)

### C.  October 2, 2017 FOIA Request – Request Nos. 1386556-000, 1398016-000 and NFP-91785

(16)    By eFOIA request dated October 1, 2017, Plaintiff submitted a three-part FOIA request to the FBI requesting the following information.  Plaintiff also requested expedited processing and a waiver of fees associated with his request.  (*See* **Exhibit H**.)

1.  Since January 1, 2010, all NDAS between the FBI and any other government entity that prohibit the release of information to Congress, any of its agencies, or any Freedom of Information Act requestors. [Part 1]

2.  All records, documents, correspondence, or other materials sent to Senator Grassley or his representatives in response to his September 25, 2017 letter. [Part 2]

3.  All emails, printed correspondence or other records indicating who was involved in drafting the NDA or NDAs referenced in Senator Grassley's September 25, 2017 letter. [Part 3]

(17)    By letter dated October 13, 2017, the FBI acknowledged receipt of Plaintiff's October 2, 2017 FOIA request and assigned it Request Number 1386556-000.  The FBI advised Plaintiff for administrative tracking purposes, additional FOIA numbers may be assigned if it is determined his request seeks records about multiple subjects.  The FBI also advised Plaintiff his request for a fee waiver was being considered.  The FBI further advised for the purposes of assessing fees it determined Plaintiff to be a general (all other) requester, and if his fee waiver was denied, Plaintiff would be charged applicable search and duplication fees in accordance with

5 U.S.C. § 552(a)(4)(A)(ii)(III).  In addition, the FBI advised Plaintiff he could check the status

of his request, or provide questions as to any FBI determinations, at www.fbi.gov/foia.  Finally,

Plaintiff was advised of his right to appeal the FBI's response determination by writing to OIP,

within ninety (90) days from the date of this letter, or seek dispute resolution services by

contacting the OGIS, by telephone or by email at ogis@nara.gov.  (*See* **Exhibit I.**)

      (18)     By letter dated October 23, 2017, the FBI advised Plaintiff it denied his request

for expedited processing.  Plaintiff was advised he could provide questions as to any FBI

determinations, at www.fbi.gov/foia, he could appeal the FBI's response determination by

writing to OIP, within ninety (90) days from the date of this letter, or seek dispute resolution

services by contacting the OGIS, by telephone or by email at ogis@nara.gov.  (*See* **Exhibit J.**)

      (19)     By letter dated March 8, 2019, the FBI advised Plaintiff his October 2, 2017

request originally assigned Request Number 1386556-000 was also assigned the following

additional FOIA tracking numbers:

> Part 1 assigned Request No.: NFP-91785
> Subject:  All non-disclosure agreements between the FBI and other government
> entities preventing the release of information to FOIA requesters (January 1, 2010
> - Present)
>
> Part 3 assigned Request No.: 1398016-000
> Subject:  Records regarding the drafting of non-disclosure agreement referenced
> in Senator Grassley's September 25, 2017 letter

The FBI further advised Plaintiff he could check the status of his request, or provide questions as

to any FBI determinations, at www.fbi.gov/foia.  Finally, Plaintiff was advised of his right to

appeal the FBI's response determination by writing to the OIP, within ninety (90) days from the

date of this letter, or seek dispute resolution services through OGIS.  (*See* **Exhibit K.**)

      (20)     By submission through OIP's eFOIA portal on October 24, 2017, Plaintiff

appealed the FBI's denial of expedited processing.  (*See* **Exhibit L.**)

(21)     By letter dated November 9, 2017, OIP acknowledged receipt of Plaintiff's

appeal, assigned it Appeal No. DOJ-AP-2018-000376, and affirmed the FBI's determination to

deny Plaintiff's request for expedited treatment.  In its letter, OIP advised that the Director of

Public Affairs considered his request for expedited processing under the fourth standard and

determined that his request should be denied because you have failed to sufficiently demonstrate

that the subject of your request is "[a] matter of widespread and exceptional media interest in

which there exist possible questions about the government's integrity which effect public

confidence." Finally, OIP advised Plaintiff he could file a lawsuit in accordance with 5 U.S.C. §

552(a)(6)(E)(iii) if he was dissatisfied with its action on the appeal, or he could use the mediation

services of OGIS to help resolve disputes between FOIA requesters and Federal agencies as a

non-exclusive alternative to litigation.  (*See* **Exhibit M.**)

(22)     By letter dated March 13, 2018, the FBI advised Plaintiff that a portion of his

October 1, 2017 request (Part 1 / NFP-91785) seeking various purported non-disclosure

agreements (NDAs) since January 1, 2010, was overbroad, vague, and lacks sufficient detail for

agency personnel to locate records with a reasonable amount of effort.  Thus, the information

requested was not searchable via the CRS indices.  The FBI further advised Plaintiff that for the

reasons stated, this portion of his request was closed. [5]  Additionally, the FBI advised Plaintiff he

could resubmit this item of his request if he provided more narrowed and detailed information

that would enable personnel to locate any such material, such as identifying specific records or

agreements with specific dates.  Finally, the FBI advised Plaintiff that: 1) it was unnecessary to

adjudicate his request for a fee waiver; 2)  for questions on how to reasonably describe your

request please email foipaquestions@fbi.gov; 3) he may appeal the FBI's decision by submitting

---

[5] The FBI did not conduct a search for NFP-91785.

an appeal, by mail or online with OIP, within ninety days from the date of the letter; or 4) he may

seek dispute resolution services by contacting the Office of Government Information Services

("OGIS") by telephone or by emailing ogis@nara.gov. (*See* **Exhibit N.**)

(23)     By letter dated March 14, 2018, Plaintiff appealed to OIP the FBI's determination

concerning NFP-91785. Plaintiff advised, "[i]t is not plausible to suggest that the FBI Office of

General Counsel is unable to search for non-disclosure agreements that it executed with other

agencies, and it should not matter whether the documents are logged into the "Central Records

System." (*See* **Exhibit O.**)

(24)     On March 14, 2018, Plaintiff filed his complaint in the instant action. (*See* **ECF

No. 1.**)

(25)     By email dated March 14, 2018, Plaintiff inquired how he could check the status

of his FOIA requests. By email dated March 15, 2018, the FBI's PIO advised Plaintiff the status

for the following request numbers:

  a.) <u>1386556-000</u>: "is presently awaiting assignment to a Disclosure analyst who
      will then review the records to determine if any redactions are required
      pursuant to subsections of Title 5, U.S. Code, Section 552 and 552a."

  b.) <u>1398016-000</u>:"is presently in Initial Processing, where the assigned analyst is
      searching for, retrieving and reviewing potentially responsive records.

  c.) <u>NFP-91785</u>:  "By letter dated March 13, 2018, the FBI responded via the
      electronic FOIA portal."

(*See* **Exhibit P.**)

(26)     By letter dated March 15, 2018, OIP acknowledged receipt of Plaintiff's appeal

concerning the FBI's determination on NFP-91785 and assigned it Appeal No. DOJ-AP-2018-

003303. (*See* **Exhibit Q.**)

(27)     By letter dated October 9, 2018, the FBI made an interim release of records

responsive to Parts 2 and 3 of Plaintiff's October 1, 2017 FOIA Request (Request Nos. 1386556-000 and 1398016-000). The FBI advised Plaintiff it reviewed 286 pages[6] and 4 pages were being released to him in their entirety with no excisions made by the FBI. The FBI informed Plaintiff it was consulting with OGAs about documents that either originated with or contained information concerning the OGAs. The FBI further advised the material was provided to him at no charge; thus it was unnecessary to adjudicate his request for a fee waiver. Additionally, the FBI advised Plaintiff that pursuant to the Status Conference held on August 23, 2018 in this litigation, the FBI received and scoped approximately 1,786 pages of records received from the United States Office of Special Counsel in response to his September 30, 2017 FOIA request submitted to their office. The FBI determined the records were not responsive to the litigated requests described herein. Finally, Plaintiff was advised to direct any further inquiries about this case to the Attorney representing the Government in this matter. (*See* **Exhibit R**.)

(28)    By letter dated November 9, 2018,[7] the FBI made its 2nd interim release of records responsive to Plaintiff's October 1, 2017 FOIA Request, specifically Part 3 (Request No. 1398016-000). The FBI advised Plaintiff it reviewed 50 pages and 42 pages were being released to him in full or in part, with certain information withheld pursuant to FOIA Exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E). Finally, Plaintiff was advised to direct any further inquiries about this case to the Attorney representing the Government in this matter. (*See* **Exhibit S**.)

---

[6] Request No. 1398016-000: 236 pages were reviewed, 4 pages were released, and 232 pages were sent to OGAs. Request No. 1386556-000: 50 pages were reviewed and sent to OGAs.

[7] The FBI determined that this letter was inaccurate. Specifically, the letter should have advised Plaintiff that this was the FBI's final response to Request No. 1398016-000 and that redactions were made by the FBI, as well as the U.S. Office of Special Counsel and the Executive Office for United States Attorneys ("EOUSA"). Additionally, the FBI inadvertently advised Plaintiff the FBI was consulting with and/or awaiting OGA responses. There were no outstanding consultations.

(29)    By cover letter dated November 27, 2018, the FBI forwarded a REVISED release letter to Plaintiff.  The FBI advised Plaintiff its November 9th release was the final release responsive to Request No. 1398016-000.  (*See* **Exhibit T**.)  On or about December 18, 2018, this revised package was returned to the FBI by Federal Express for insufficient address.  The FBI checked Plaintiff's address and resent the package to Plaintiff via certified mail.  The FBI received confirmation from the Post Office that Plaintiff signed for the package.

(30)    By letter dated December 12, 2018, the FBI made its final release of records responsive to Plaintiff's October 1, 2017 FOIA Request, specifically Part 2 (Request No. 1386556-000).  The FBI advised Plaintiff it reviewed 232 pages and 230 pages were being released to him in full or in part, with certain information withheld pursuant to FOIA Exemptions (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), and (b)(7)(E), by either the FBI and/or OIP.[8]  Finally, Plaintiff was advised to direct any further inquiries about this case to the Attorney representing the Government in this matter.  (*See* **Exhibit U**.)

(31)    By letter dated July 23, 2019, the FBI provided Plaintiff a combined supplemental release of the records in response to Request No. 1386556-000 and 1398016-000.  This supplemental release provided Plaintiff additional segregable portions of FBI and US Office of Special Counsel information on Bates-numbered pages FBI 18-cv-01568 6, 8, 12, 28, 30, 31, 33, 34, 36, 42, 52, 54, 122, 124-126, 241-243, 250, 252-254, 260, 265-268, 273, 278-279 and 283.  (*See* **Exhibit V**.)

**SEARCH FOR RECORDS RESPONSIVE TO
PLAINTIFF'S FOIPA REQUEST NO. 1384180-000**

(32)    The description of the FBI's searches conducted for records responsive to

---

[8] The letter inadvertently noted redactions were made by EOUSA.  Upon further review, no redactions were made by EOUSA.

Plaintiff's FOIA request concerning Seth Rich (Request No. 1384180-000) is set forth in my

First Hardy Declaration[9] and will not be recounted herein. *See* First Hardy Declaration, ECF No.

16-1, ¶¶ 11-24 and Exhibit G hereto.

## JUSTIFICATION FOR NONDISCLOSURE UNDER THE FOIA

### *Explanation of the Coded Format Used to Describe and Justify Withholdings from the Records Challenged by Plaintiff*

(33)    All documents responsive to Plaintiff's requests and subject to the FOIA were

processed to achieve maximum disclosure consistent with the access provisions of the FOIA.

Every effort was made to provide Plaintiff with all material in the public domain and with all

reasonably segregable non-exempt information in the responsive records.  No reasonably

segregable, non-exempt portions have been withheld from Plaintiff. Further description of the

information withheld, beyond what is provided in this declaration, could identify the actual

exempt information that the FBI has protected.  Copies of the pages released in part and in full

have been consecutively numbered "FBI 18-cv-01568 - 1 through FBI 18-cv-01568 - 296" at the

bottom of each page.[10]  Pages withheld in their entirety (e.g., removed per exemption) were

replaced by a "Deleted Page Information Sheet" ("DPIS"), identifying the reason and/or the

---

[9] For purposes of further clarity concerning the FBI's June 21, 2017 contact with WFO identified in Paragraph 22 of the First Hard Declaration, this contact was made prior to the FBI's receipt of Plaintiff's September 1, 2017 request. Specifically, the FBI prior to the receipt of Plaintiff's request, had already received another FOIA request seeking records concerning the murder of Seth Conrad Rich and in an effort to adequately respond to that request, had contacted WFO on June 21, 2017 to determine whether or not an investigation had been opened.  As identified in Paragraph 23 of the First Hardy Declaration, the FBI re-contacted WFO on April 4, 2018 to confirm that they did not assist Metropolitan Police Department ("MPD"), provide investigative or technical assistance to MPD, or open an FBI investigation into the murder of Seth Conrad Rich.

[10] Copies of four of the documents provided to the FBI by OIP, which Plaintiff appears to be challenging herein, have been consecutively Bates-numbered "18-cv-01568 (OIP)-1 through 18-cv-01568 (OIP)-22, by the FBI.  Several of these pages were provided to Bates-numbered pages 18-cv-01568 (OIP) 4, 5, and 8-17 contain redactions that were not made pursuant to the FOIA.

applicable FOIA exemptions relied upon to withhold the pages in full, as well as Bates numbers

for the withheld material. The DPISs and Bates-numbered pages that were withheld in part were

provided to Plaintiff and will be made available to the Court upon request. The exemptions

asserted by the FBI as grounds for non-disclosure of portions of documents are FOIA

exemptions 3, 5, 6, 7(A), 7(C), and 7(E), 5 U.S.C. §§ 552 (b)(3), (b)(5), (b)(6), (b)(7)(A),

(b)(7)(C), and (b)(7)(E).

(34)    The Bates-numbered documents contain, on their face, coded categories of

exemptions that detail the nature of the information withheld pursuant to the provisions of the

FOIA. The coded categories are provided to aid the Court's and Plaintiff's review of the FBI's

explanation of the FOIA exemptions it asserted to withhold material. The coded, Bates

numbered pages together with this declaration and *Vaughn* Index attached hereto as **Exhibit W**

demonstrate that all material withheld by the FBI is exempt from disclosure pursuant to the cited

FOIA exemptions, or is so intertwined with protected material that segregation is not possible

without revealing the underlying protected material.

(35)    Each instance of information withheld on the Bates-numbered documents is

accompanied by a coded designation that corresponds to the categories listed below. For

example, if (b)(7)(C)-1 appears on a document, the "(b)(7)(C)" designation refers to FOIA

Exemption (7)(C) protecting against unwarranted invasions of personal privacy. The numerical

designation of "1" following the "(b)(7)(C)" narrows the main category into a more specific

subcategory, such as "Names and/or Identifying Information of FBI Special Agents/Professional

Staff."

(36)    Listed below are the categories used to explain the FOIA exemptions asserted to

withhold the protected material in FBI releases Bates-numbered FBI 18-cv-01568-1 through FBI

18-cv-01568-296 and OIP Documents which the FBI has Bates-numbered 18-cv-01568 (OIP) –

1 through 18-cv-01568 (OIP) – 22.

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **Exemption (b)(3)** | **INFORMATION PROTECTED BY STATUTE** |
| (b)(3) - 1 | This Coded Category is no longer being applied to withhold information on Bates-numbered pages FBI 18-cv-01568-6, 8, and 42.  These pages were included in the FBI's July 23, 2019 supplemental release to Plaintiff. Portions of information on these pages remain withheld pursuant to other applicable FOIA Exemptions. |
| **Exemption (b)(5)** | **PRIVILEGED INFORMATION** |
| (b)(5)-1 | Deliberative Process Privilege |
| (b)(5)-2 | Attorney Work Product Privilege |
| (b)(5)-3 | Attorney Client Privilege |
| **Exemption (b)(6) and Exemption (b)(7)(C)** | **CLEARLY UNWARRANTED INVASION  OF PERSONAL PRIVACY AND UNWARRANTED INVASION OF PERSONAL PRIVACY** |
| (b)(6)-1 and (b)(7)(C)-1 | Names and Identifying Information of FBI Special Agents and Professional Staff |
| (b)(6)-2 and (b)(7)(C)-2 | Names and Identifying Information of Non-FBI Federal Government Personnel |
| (b)(6)-3 and (b)(7)(C)-3 | Names and Identifying Information of Third Parties Merely Mentioned |
| **Exemption (b)(7)(A)** | **PENDING LAW ENFORCEMENT PROCEEDINGS** |
| (b)(7)(A)-1 | Information Which, if Disclosed, Could Reasonably be Expected to Interfere with Pending Law Enforcement Proceedings *[cited at times in conjunction with FOIA Exemption 7(E)]*[11] |

[11] Upon further review of the records, the FBI determined that it is no longer asserting Exemption (b)(7)(A)-1 to withhold information on Bates-numbered pages FBI 18-cv-01568-122, 124-126, 252-253 and 273.  These pages were included in the FBI's July 23, 2019 supplemental release to Plaintiff.

| Exemption (b)(7)(E) [12] | LAW ENFORCEMENT INVESTIGATIVE TECHNIQUES AND PROCEDURES |
|---|---|
| (b)(7)(E)-1 | This Coded Category is no longer being applied to withhold information on Bates-numbered pages FBI 18-cv-01568-6, 8, and 42.  These pages were included in the FBI's July 23, 2019 supplemental release to Plaintiff. Portions of information on these pages remain withheld pursuant to other applicable FOIA Exemptions. |
| (b)(7)(E)-2 | Numbers of Personnel, Identity and/or Location of FBI Units and Divisions |
| (b)(7)(E)-3 | This Coded Category is no longer being applied to withhold information on Bates-numbered pages FBI 18-cv-01568-85, 86, 122, 124-126, 177-179, 197-198, 250, 252-254, 260, 265-268, 272-273, 275-277, 282, and 284. [13] |
| (b)(7)(E)-4 | Investigative Focus of Specific Investigation [14] |
| (b)(7)(E)-7 | Collection and Analysis |

[12] As identified in footnote 2, *supra,* this declaration addresses the FBI's handling of records responsive to specific FOIPA requests, and only certain releases of records provided in response to those requests. Therefore, not all coded categories are addressed herein.

[13] These pages were included in the FBI's July 23, 2019 supplemental release to Plaintiff. All information on Bates-numbered pages FBI 18-cv-01568-122, 124-126, 250, 260, and 268 has now been released in full.  Portions of information on the remaining pages, remain withheld pursuant to other applicable FOIA Exemptions.

[14] Upon further review of the records, the FBI determined that it is no longer asserting Exemption Coded Category (b)(7)(E)-4 to withhold information on Bates-numbered pages FBI 18-cv-01568-241, 243, 278, 279, and 283.  All information on Bates-numbered pages FBI 18-cv-01568-241, 243, and 283 have now been released in full.  Portions of information on the remaining pages, remain withheld pursuant to other applicable FOIA Exemptions.  Further, the FBI has changed the Exemption Coded Category for portions of information withheld on Bates-numbered pages FBI 18-cv-01568-265, 273, 277 and 284 from (b)(7)(E)-3 to (b)(7)(E)-4.  All of the aforementioned pages were included in the FBI's July 23, 2019 supplemental release to Plaintiff

## EXEMPTION (b)(5) – PRIVILEDGED INFORMATION

(37)     FOIA Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

(38)     Exemption 5 has been construed to exempt documents or information normally privileged in the civil discovery context and incorporates, *inter alia*, the attorney work product, attorney-client and deliberative process privileges.  Generally, the attorney work product privilege protects documents and other memoranda prepared by an attorney or under the direction of any attorney as part of, or in reasonable anticipation of litigation.  The attorney-client privilege protects confidential communications from a client to an attorney and from an attorney to a client for the purpose of seeking and providing legal advice.  This privilege also covers client-supplied information and opinions given by an attorney based on and reflecting that information.  The deliberative process privilege protects pre-decisional, deliberative communications that are part of a process by which agency decisions are made, as well as the selection and sorting of factual information relied upon as part of the decision-making process.  It also protects materials prepared as part of an agency decision-maker's formulation of opinions, advice, evaluations, deliberations, policies, proposals, conclusions, or recommendations.

(39)     In order to apply Exemption 5, agencies must first satisfy the threshold requirement – *i.e.*, show that the information protected was "inter-agency or intra-agency."  Once the threshold is satisfied, agencies must satisfy the element of the pertinent privilege.  With respect to the attorney work product privilege, agencies must show that the withheld information was created by, or for, an attorney in reasonable anticipation of litigation.  With respect to attorney-client privilege, agencies must show that the withheld information concerns confidential

16

information shared by a client with an attorney for the purpose of obtaining legal advice or

assistance, or legal advice or assistance provided by an attorney to a client reflecting confidential

information.  With respect to the deliberative process privilege, agencies must show that the

withheld information was both pre-decisional – *i.e.*, antecedent to a final agency decision – and

deliberative – *i.e.*, part of the process in which the agency engaged in an effort to reach a final

decision (whether or not any final decision was ever reached).

### <u>(b)(5)-1</u>          <u>Deliberative Process Privilege</u>

(40)    In Coded Category (b)(5)-1, the FBI protected privileged deliberative information

within email communications relating to non-disclosure agreements ("NDAs") and within two

U.S. Office of Special Counsel interview transcripts taken on May 1, 2017 of Trisha Anderson

and on May 7, 2017 of James Rybicki.

(41)    *Email Communications regarding NDAs:* The email communications at issue

here, by the released language within the emails themselves demonstrate the draft nature of the

withheld material.  Consider on Bates-stamped page FBI-18-cv-01568-5, an FBI Office of

General Counsel ("FBI OGC") employee stated "thanks for the opportunity to review" and on

FBI 18-cv-01568-6, an FBI OGC employee also stated "I worked from the language in the

current draft...then I propose instead the following language (with differences in red text)."

Lastly, the subject lines on most of the emails for which the FBI has cited the deliberative

process privilege state "NDA Language..." The verbiage for these instances along with the

subject line clearly demonstrates these emails reflect draft information which had not yet been

(or may never have been) collated into a final form.  The use of the phrase "current draft" and

"opportunity to review" among others shows that the withheld material reflects an on-going

dialogue among and between FBI employees, and other government personnel representing

preliminary versions of what may later become a final document reflecting an agency policy or

decision, or what may remain in draft format and never mature into a final, approved form
because the material may be withdrawn or discarded during the give and take of the deliberative
process leading to a final policy or decision.  Therefore the email communications are: a) pre-
decisional because they are antecedent to the adoption of agency policy and/or decisions about
the language that would be used for the NDAs; and b) similarly deliberative because they
specifically reflect the internal shaping and continuous deliberation of the FBI's position about
these issues and include proposed language and topics for discussion or consideration.  In fact,
the process by which a draft evolves into a final document is itself also a deliberative process.

(42)    *Interviews:*  The interviews were conducted during the Office of Special
Counsel's ("OSC") investigation into allegations that FBI Director James Comey violated the
Hatch Act when he made public announcements concerning the FBI's investigation into former
Secretary Hillary Clinton's use of a personal email server.  At the time of the interviews, both
Anderson and Rybicki were identified as witnesses in the OSC's investigation and were both
employees of the FBI.   The general purpose of the deliberative process privilege is to prevent
injury to the quality of agency decisions.  Thus, material containing or prepared in connection
with the formulation of opinions, advice, evaluations, deliberations, policies, proposals,
conclusions, or recommendations may properly be withheld.  The privilege also protects records
and information that if disclosed, would reveal the agency's collection of multitudinous facts,
and the sorting, evaluation, and analysis of those facts in order to make recommendations or
reach a final agency decision.  The agency's treatment of such information is itself, a
deliberation and is a deliberative process properly protected by the privilege.

(43)    Accordingly, disclosure of the type of information from either the email
communications or the interviews would have an inhibiting effect upon agency decision-making

and the development of policy because it would chill full and frank discussions between agency personnel and decision-makers regarding a decision. If agency personnel know that their preliminary impressions, opinions, evaluations, or comments would be released to the general public, they would be less candid and more circumspect in expressing their thoughts if they knew their opinions of the moment might be made a matter of public record at some future date, and because such self-censorship would, in turn, degrade the quality of agency decisions by depriving the decision-makers of fully-explored options developed from robust debate. The FBI also relies on Exemption 5 in conjunction with the deliberative process privilege to ensure that FBI employees are not forced to operate in a fishbowl when collecting and analyzing information leading to final agency decisions.

(44)   In conclusion, the FBI relied on the deliberative process privilege, in conjunction with Exemption 5, to protect information in the responsive records reflecting the decision-making process of the FBI, alone or in conjunction with other DOJ components, regarding the scope and focus of an investigation. The materials are pre-decisional in that they precede final investigative and/or prosecutive decisions, and deliberative in that they played a part in the process by which specific decisions were made about the scope and focus of an investigation. Therefore, the FBI has properly withheld this privileged information pursuant to FOIA Exemption (b)(5). A complete list of the Bates-numbered pages containing Exemption Coded Category (b)(5)-1 is set forth in the attached *Vaughn* Index, Exhibit W.

### **(b)(5)-2**      **Attorney Work Product Privilege**

(45)   In Coded Category (b)(5)-2, the FBI protected privileged attorney work products. The attorney work product privilege protects tangible and intangible items such as interviews, memoranda, correspondence, and personal beliefs prepared or developed by an attorney in

anticipation of litigation.  The privilege is predicated on the recognition that proper preparation

of a case depends on an attorney's ability to assemble information, sort relevant from irrelevant

facts, and prepare his/her legal theories and strategies without intrusive or needless scrutiny.

(46)      The FBI relied on the attorney work product privilege to protect discussions,

contained in various email communications and the OSC interview transcripts of Anderson and

Rybicki, concerning materials created by attorneys and communications between attorneys in

relation to their representation of their client.  Consider on Bates-stamped page FBI 18-cv-

01568-8, the FBI protected information in this email prepared by the Unit Chief of the FOIA

Litigation Unit describing opinions and suggestions regarding the NDA language.  Other

individuals on the email chains at issue include other government attorneys providing additional

input and suggestions as to the language.  Similarly, on FBI 18-cv-01568-177 through FBI 18-

cv-01568-179, the FBI protected information gleaned from attorney-supplied materials in

support of the FBI's investigation into former Secretary Hillary Clinton's use of a personal email

server.  Finally, because the attorney work product privilege protects both factual and

deliberative material, segregation is not required.  Accordingly, the FBI properly withheld this

information pursuant to Exemption 5.  A complete list of the Bates-numbered pages containing

Exemption Coded Category (b)(5)-2 is set forth in the attached *Vaughn* Index, Exhibit W.

**(b)(5)-3**          **Attorney-Client Privilege**

(47)      In Coded Category (b)(5)-3, the FBI protected portions of information contained

in the OSC's May 2017 interview transcripts of Anderson and Rybicki.  The protected

information reveals confidential discussions had between the interviewees and counsel in

preparation for OSC's interviews and confidential discussions between the interviewees and

legal counsel during the FBI's investigation into former Secretary Hillary Clinton's use of a

personal email server.  Such discussions are permanently protected from disclosure unless the

client waives the protection. This privilege encompasses confidential communications and discussions made to an attorney by decision-making personnel as well as lower echelon employees who possess information relevant to an attorney's advice-rendering function. Disclosure of the discussions between FBI attorneys and their clients would impede the full disclosure of all of the information that relates to the client's reasons for seeking legal advice, which is necessary if the professional mission is to be accomplished.

(48)    The FBI protected the discussions between and among FBI counsel and their FBI client employees reflecting the seeking and/or providing of legal advice with respect to aspects of an investigation. These discussions were made in confidence and for the purpose of formulating and dispensing legal advice; disclosure of the discussions between FBI attorneys and their agency clients would inhibit clients from being completely candid with their attorneys in relation to the issue about which they are seeking legal advice. Such candor and full disclosure is necessary in order to ensure that thorough and sound legal advice is provided. Accordingly, the FBI has properly withheld this privileged information pursuant to FOIA Exemption (b)(5). A complete list of the Bates-numbered pages containing Exemption Coded Category (b)(5)-3 is set forth in the attached *Vaughn* Index, Exhibit W.

## EXEMPTION 7 THRESHOLD

(49)    Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Pursuant to 28 U.S.C. §§ 553, 534, and Executive Order 12333 as implemented by the Attorney General's Guidelines for Domestic Operations ("AGG-DOM") and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to

another agency, to conduct investigations and activities to protect the United States and its

people from terrorism and threats to national security, and further the foreign intelligence

objectives of the United States.  Under this investigative authority, the responsive records herein

were compiled during an FBI counterterrorism investigation of third party subject(s) and

Plaintiff's Complaint concerning an FBI investigation wherein he was the subject of

investigative interest.  Thus, these records were compiled for law enforcement purposes; they

squarely fall within the law enforcement duties of the FBI; and therefore, the information readily

meets the threshold requirement of Exemption (b)(7).

### *EXEMPTION 7(A) – PENDING ENFORCEMENT PROCEEDINGS*

(50)    5 U.S.C. § 552 (b)(7)(A) exempts from disclosure:

> records or information compiled for law enforcement purposes, but
> only to the extent that the production of such law enforcement
> records or information … could reasonably be expected to interfere
> with enforcement proceedings.

(51)    Application of this exemption requires:  the existence of law enforcement records;

a pending or prospective law enforcement proceeding; and a determination that release of the

information could reasonably be expected to interfere with the enforcement proceeding.  As

relevant here, the FBI is asserting FOIA Exemption 7(A) to withhold information within the

records responsive to Plaintiff's request because the premature release of this information could

reasonably be expected to interfere with ongoing investigations.

#### (b)(7)(A)-1    Information Which, if Disclosed, Could Reasonably be Expected to Interfere with Pending Law Enforcement Proceedings

(52)    In Coded Category (b)(7)(A)-1, the FBI protected sensitive information within

records responsive to Plaintiff's requests pertaining to on-going investigations.  The FBI has

determined that disclosure of any information, in the midst of active and ongoing investigations,

22

is reasonably expected to interfere with these investigations. Further, disclosure of this information could reach the individuals who are under investigation, which could cause them to take actions to evade law enforcement scrutiny and detection and otherwise interfere in the investigations; thus undermine the United States' ability to bring them to justice. Accordingly, the FBI concluded the release of this information would adversely affect pending investigations and therefore, protected the information pursuant to FOIA Exemption 7(A), in conjunction with FOIA Exemption 7(E). A complete list of the Bates-numbered pages containing Exemption Coded Category (b)(7)(A)-1 is set forth in the attached *Vaughn* Index, Exhibit W.

## <u>EXEMPTIONS 6 AND 7(C)</u><br><u>INVASIONS OF PERSONAL PRIVACY</u>

(53)    Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). All information that applies to a particular person falls within the scope of Exemption 6.

(54)    Exemption 7(C) similarly exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).[15]

(55)    When withholding information pursuant to these two exemptions, the FBI is required to balance the privacy interests of the individuals mentioned in these records against any

---

[15] The practice of the FBI is to assert Exemption 6 in conjunction with Exemption 7(C). Although the balancing test for Exemption 6 uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption 7(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion. The privacy interests are balanced against the public's interest in disclosure under both exemptions.

public interest in disclosure. In asserting these exemptions, each piece of information was scrutinized to determine the nature and strength of the privacy interest of every individual whose name and/or identifying information appears in the documents at issue. When withholding the information, the individual's privacy interest was balanced against the public's interest in disclosure. For purposes of these exemptions, a public interest exists only when information about an individual would shed light on the FBI's performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners. In each instance wherein information was withheld pursuant to Exemptions 6 and 7(C), the FBI determined that the individuals' privacy interests outweighed any public interest in disclosure.

### (b)(6)-1 and (b)(7)(C)-1 Names and Identifying Information of FBI Special Agents and Professional Staff

(56)     In Coded Categories (b)(6)-1 and (b)(7)(C)-1, the FBI protected the names, identifying information, email addresses and personnel cellular telephone numbers of FBI Special Agents ("SAs") and professional staff who were responsible for receiving, reviewing, analyzing, supervising, conducting and/or maintaining the investigative activities and the day-to-day operations of the FBI reflected in the responsive documents. These responsibilities included compiling information, as well as reporting on the status of the investigations. FBI SAs and professional staff, attorneys and paralegals have access to information regarding official law enforcement investigations, and therefore may become targets of harassing inquires for unauthorized access to information regarding such investigations if their identities were released. Assignments of SAs, professional staff, attorneys and paralegals to any particular matter or investigation are not by choice. Publicity (adverse or otherwise) regarding any particular

investigation to which they have been assigned may seriously prejudice their effectiveness in conducting other investigations. The privacy consideration is also to protect FBI SAs, professional staff, attorneys and paralegals as individuals, from unnecessary, unofficial questioning as to their assistance rendered in matters such as described in the processed records, or their conduct in other investigations and/or legal matters, whether or not they are currently employed by the FBI. For example, an individual targeted by such law enforcement actions may carry a grudge. Such individuals may seek revenge on the agents, professional staff, attorneys and/or paralegals involved in a particular investigation or legal matter. Thus, these FBI employees maintain substantial privacy interests in not having their identities, information, email addresses, and personnel cellular telephone numbers[16] disclosed. In contrast, there is no public interest to be served by disclosing the identities of the SAs, professional staff, attorneys and/or paralegals to the general public because their identities would not significantly increase the public's understanding of the FBI's operations and activities.

(57)     Accordingly, the FBI protects the names and identifying information of all lower ranking personnel in all FBI records, including records compiled for reasons other than law enforcement, pursuant to FOIA Exemption 6.

(58)     First, there is no public interest in the release of this specific information because release of the names and identifying information of lower ranking FBI personnel does not shed light on government operations. Second, there are cognizable privacy interests connected to the

---

[16] Given the personal nature of an individual's mobile device, which by its very nature is routinely carried on one's person when he or she is physically out of the office, at home, and/or on personal time, there is a greater potential for invasion of privacy in the disclosure of such cellular telephone numbers than there is in an individual's office telephone number. The release of such information could subject those employees to unwarranted harassment in their personal time and personal lives, and as such the release of such information would "constitute a clearly unwarranted invasion of personal privacy."

release of FBI employee names and identifying information regardless of the specific position held, *e.g.*, a Special Agent, Intelligence Analyst, or Professional Staff.   As a law enforcement and intelligence agency with myriad missions including counterterrorism, counterintelligence, and cybercrime, mere employment with the FBI – and the access to classified information that it provides – puts all FBI employees at risk of clearly unwarranted invasions of privacy.

(59)    Additionally, all FBI employees possess Top Secret clearances allowing access to classified material and systems, including Sentinel, the FBI's electronic "next generation" case management system where sensitive criminal and national security investigative information is stored.  Positive identification as an FBI employee is of genuine interest to criminal elements, terrorists, and foreign intelligence services.  As a result, the FBI routinely protects the names and identifying information of all lower ranking employees as their status of an FBI employee, on its own, may subject them to harassment by criminals seeking access to FBI information or retribution, violent acts of terrorists who advocate bodily harm against U.S. law enforcement and military personnel in furtherance of ideology, or recruitment by foreign agents intent on espionage.  As such, FBI professional staff have identifiable privacy interests in protection from the harms above as well as unnecessary, unofficial questioning as to the conduct of investigations or the law enforcement activities they support.

(60)    Moreover, these identifiable harms are not confined to FBI occupation and do not turn on whether or not the FBI records disclosing the identifying employee information was compiled for a law enforcement purposes.  Adversaries who pose harm to the FBI are not required to draw distinctions between FBI employees based on occupation or the reason an FBI record was compiled--the key piece of information is identifying the individual as a member of the FBI.  For instance, a foreign intelligence agent seeking to recruit an FBI employee might

pursue an opportunity to turn a professional staff employee to try to get access to classified information.

(61)    Finally, applying the balance of interests, the identifiable FBI employee privacy interests articulated above outweigh the lack of any public interest in disclosure demonstrating how government works, thus triggering a clearly unwarranted invasion of privacy with reasonably foreseeable harm to those privacy interests.  Accordingly, the FBI properly withheld their names, identifying information, email addresses and personnel cellular telephone numbers pursuant to Exemptions 6 and 7(C).  A complete list of the Bates-numbered pages containing Exemption Coded Categories (b)(6)-1 and (b)(7)(C)-1 is set forth in the attached *Vaughn* Index, Exhibit W.

### (b)(6)-2 and (b)(7)(C)-2    Names and Identifying Information of Non-FBI Federal Government Personnel

(62)    In Coded Categories (b)(6)-2 and (b)(7)(C)-2, the FBI protected the names, email addresses and identifying information of non-FBI federal government personnel identified in the records responsive to Plaintiff's requests.  Disclosure of the identities, email addresses and identifying information of non-FBI federal government personnel could subject these individuals to unauthorized inquiries and harassment and would constitute a clearly unwarranted invasion of their personal privacy.  The rationale for protecting the non-FBI federal government employees is the same as that for FBI employees discussed at ¶¶ 56-61, *supra*.  In balancing the legitimate privacy interest of these individuals against any public interest in disclosure, the FBI determined that there is no *bona fide* public interest in this information because its disclosure will not shed light on the operations and activities of the federal government.  Accordingly, the FBI concluded that the disclosure of this information would "constitute a clearly unwarranted" and "unwarranted invasion of their personal privacy."  The FBI properly protected the names, email

addresses and identifying information of non-FBI federal government personnel pursuant to

FOIA Exemptions 6 and 7(C).  A complete list of the Bates-numbered pages containing

Exemption Coded Categories (b)(6)-2 and (b)(7)(C)-2 is set forth in the attached *Vaughn* Index,

Exhibit W.

### (b)(6)-3 and (b)(7)(C)-3      Names and Identifying Information of Third Parties Merely Mentioned

(63)    In Coded Categories (b)(6)-3 and (b)(7)(C)-3, the FBI protected Huma Abedin's

Personal e-mail address,[17] as well as the names, identifying information, and personnel cellular

telephone numbers of third parties who were merely mentioned in the investigatory records

containing information responsive to Plaintiff's request.  The FBI has information about these

third parties in its files because these individuals came into contact with subjects of FBI

investigations.  These individuals were not of investigative interest to the FBI.  These third

parties maintain substantial and legitimate privacy interests in not having this information

---

[17] Ms. Abedin has substantial privacy interests in her personal e-mail account.  Logically, individuals use personal e-mail addresses for corresponding with friends and family, and receiving a variety of other personal correspondence related to, for example, medical, financial, and other matters.  Individuals certainly have reasonable expectations that Government agencies will not make their personal contact information available to the general public.  Public release of this information could subject Ms. Abedin to unwarranted harassment if she is still using this account.  It could also allow individuals intent on causing her harm to use this address to impersonate or otherwise adversely affect her.  Thus, the FBI concluded that she has a privacy interest in not having her personal e-mail address disclosed to the public.

The FBI then considered whether there was any public interest that would override Ms. Abedin's privacy interest.  Again, a public interest exists only when the information to be disclosed would significantly increase the public's understanding of the FBI's performance of its mission.  Ms. Abedin's personal e-mail address, by itself, sheds no light on the FBI's activities and operations in relation to obtaining the search warrant at issue in this case, nor in the Clinton e-mail investigation more broadly.  Accordingly, in the absence of a public interest, Ms. Abedin's privacy interest necessarily prevails and the FBI properly protected her e-mail address pursuant to FOIA Exemptions (b)(6) and (b)(7)(C).

disclosed. Disclosure of these third parties' names and/or identifying information in connection

with an FBI investigation carries an extremely negative connotation. Disclosure of their

identities would subject these individuals to possible harassment or criticism and focus

derogatory inferences and suspicion on them. The FBI then considered whether there was any

public interest that would override these privacy interests, and concluded that disclosing

information about individuals who were merely mentioned in an FBI investigative file would not

significantly increase the public's understanding of the operations and activities of the FBI.

Accordingly, the FBI properly protected these individuals' privacy interests pursuant to FOIA

Exemptions 6 and 7(C). A complete list of the Bates-numbered pages containing Exemption

Coded Categories (b)(6)-3 and (b)(7)(C)-3 is set forth in the attached *Vaughn* Index, Exhibit W.

**EXEMPTION (b)(7)(E)**
**INVESTIGATIVE TECHNIQUES AND PROCEDURES**

5 U.S.C. § 552(b)(7)(E) provides protection for:

Law enforcement records which would disclose techniques and procedures
for law enforcement investigations or prosecutions, or would disclose
guidelines for law enforcement investigations or prosecutions if such
disclosure could reasonably be expected to risk circumvention of the law.

(64) Exemption (b)(7)(E) has been asserted, at times in conjunction with Exemptions 3

and 7(A), to protect information from these records, the release of which would disclose

techniques and/or procedures for law enforcement investigations or prosecutions, or would

disclose guidelines for law enforcement investigations or prosecutions if such disclosure could

reasonably be expected to risk circumvention of the law. This exemption affords categorical

protection to techniques and procedures used in law enforcement investigations; it protects

techniques and procedures that are not well-known to the public as well as non-public details

about the use of well-known techniques and procedures.

(65)     Within the responsive documents, Exemption (b)(7)(E) has been applied to non-public investigative techniques and procedures utilized by the FBI to pursue its law enforcement and intelligence gathering missions, and also to non-public details about techniques and procedures that are otherwise known to the public.  Specifically, the FBI asserted Exemption (b)(7)(E) to protect the application of certain sensitive investigation techniques within the responsive records.

(66)     The FBI's rationale for protecting this information cannot be examined in a vacuum; it must be analyzed within the larger context of our country's current national security climate.  The FBI is charged with protecting the nation from security risks posed by U.S. and non-U.S. individuals, organizations (such as terrorist groups), and foreign nations that seek to harm the United States.  Thus, if specific investigative techniques or procedures are made public, the very criminals and terrorist groups who seek harm to U.S. interests can use the information to their advantage, learn FBI tactics in gathering information, and develop countermeasures to avoid detection.

### (b)(7)(E)-2     Numbers of Personnel, Identity and/or Location of FBI Units and Divisions

(67)     In Coded Category (b)(7)(E)-2, the FBI protected information regarding the size, and/or composition of FBI units and divisions.  This information includes the number of personnel assigned to specific units and divisions.  Revealing the number of personnel assigned to specific units or divisions would allow criminals or adversaries to deduce the amount of resources that the FBI is dedicating to particular areas and types of operations.  Revealing the non-public locations and information concerning FBI units or squads would allow criminals and/or adversaries to scout non-public FBI joint locations and gain insight on the FBI's capabilities in a certain region, as well as to construct a map of FBI locations, thereby giving

them the insight into areas where the FBI has a less robust presence.  Armed with such

knowledge, criminals and adversaries would organize their illicit activities to exploit subject

areas or geographical locations where the FBI has less presence or resources, thus circumventing

the law.  Therefore, the FBI has properly withheld this information under Exemption 7(E).  A

complete list of the Bates-numbered pages containing Exemption Coded Category (b)(7)(E)-2 is

set forth in the attached *Vaughn* Index, Exhibit W.

### (b)(7)(E)-4    Investigative Focus of Specific Investigation

(68)    In Coded Category (b)(7)(E)-4 the FBI protected the investigative focus of a

specific FBI investigation.  Revealing the broader focus as it relates to this investigation would

reveal the scope of the FBI's programs and the strategies it plans to pursue in preventing and

disrupting criminal activity.  Release of this type of information would allow criminals to gauge

the FBI's strengths and weaknesses within certain areas of the criminal arena and structure their

activities in a manner that avoids detection and disruption by the FBI.  For example, if criminals

knew that certain individuals were being investigated based on their association with on

particular individual, they would be able to discern that their association with this particular

individual may cause them to be the subjects of an FBI investigation.  They may then decide to

cut ties with this individual and find different ways to pursue criminal activities thus

circumventing the FBI's efforts.  As releasing the focus of a specific FBI investigation would

enable criminals to circumvent the law, this information is exempt from disclosure pursuant to

Exemption 7(E).  A complete list of the Bates-numbered pages containing Exemption Coded

Category (b)(7)(E)-4 is set forth in the attached *Vaughn* Index, Exhibit W.

### (b)(7)(E)-7    Collection and Analysis

(69)    In Coded Category (b)(7)(E)-7 the FBI protected techniques and procedures the

FBI uses to collect and analyze information in connection with both criminal and national

security investigations. While the techniques may be known by the public in a general sense, the technical analysis of these sensitive law enforcement techniques, to include the specifics of how and in what setting they are employed, is not generally known to the public. The release of this information would disclose the identity of methods used in collecting and analyzing information, including how and from where the FBI collects information, and the methodologies employed to analyze it. Such disclosures would enable investigative subjects to circumvent similar and currently used techniques. The relative utility of these techniques could be diminished if the actual techniques were released. In turn, this would facilitate the accumulation of information by investigative subjects regarding the circumstances under which specific techniques were used or requested to collect certain information, how the information collected is analyzed, and the usefulness of the information obtained. Release of this information would enable criminals and terrorists to educate themselves on techniques employed by the FBI in collecting and analyzing information, thus allowing them to take countermeasures to circumvent the effectiveness of these techniques.

(70)    The records also contain sensitive information about investigative methods used by the FBI in conducting both criminal and national security investigations. Releasing information on these methods and use would, in essence, highlight the types of activities, facts, or occurrences that are of particular interest to the FBI in both criminal and national security investigations. Publicly disclosing investigative methods, analysis of information gleaned from the methods, or any other sort of details regarding it, would inform individuals of the kinds of information the FBI is interested in capturing and would afford them the opportunity to employ countermeasures to circumvent detection or alter behavior to mislead investigators. Accordingly, the FBI properly withheld this information pursuant to FOIA Exemption 7(E). A

complete list of the Bates-numbered pages containing Exemption Coded Category (b)(7)(E)-7 is set forth in the attached *Vaughn* Index, Exhibit W.

## Department of Justice, Office of Information Policy's Justification for Non-Disclosure Under the FOIA

(71)     The Office of Information Policy ("OIP") processes FOIA requests on behalf of the senior leadership office of the DOJ, and, in relevant part, processed portions of the responsive transcript on behalf of the Office of the Deputy Attorney General ("ODAG"). Specifically, OIP focused its attention on those portions of the transcript that would reveal protected, deliberative discussions involving ODAG personnel.

(72)     In each instance where OIP withheld information pursuant to the deliberative process privilege of Exemption 5, OIP determined that the information was both predecisional and deliberative. It is apparent from the surrounding, released portions of the transcript that Mr. Rybicki is recounting an internal decision-making process involving himself, and employees of ODAG and the FBI, and this decision-making process, by definition, preceded a final agency decision – *i.e.,* FBI's decision regarding the extent to which it would be appropriate to provide information to Congress regarding an FBI investigation. The released portions of this transcript also support OIP's determination that the information withheld is deliberative because it reflected Department of Justice (Department) employees' nascent views, evaluations, recommendations, and opinions regarding the Department's interactions with Congress regarding an FBI investigation.[18] ODAG is the senior leadership office of the DOJ responsible for overall supervision of DOJ components, including the FBI. In this instance, the FBI engaged ODAG in

---

[18] OIP also withheld individual words or phrases, which appeared in the transcript's index in order to fully protect the information protected within the body of the transcript. OIP's basis for withholding the information within the index is the same for withholding the information within the body of the transcript.

conversation as part of its own decision-making process. The FBI provided ODAG with contextualized information, substantive analysis of that information, related suggestions, and recommendations. ODAG responded, in turn, evaluating these recommendations and engaging in back and forth conversation as part of their efforts to reach the best decision possible.

(73)     Disclosure of the protected portions of this transcript would severely hamper the efficient day-to-day workings of the Department, because Departmental employees would no longer feel free to discuss their ideas, strategies, and advice, for fear that this type of information might regularly be released to the public. This would harm agency deliberations because agency decision-making can only be at its best when employees are able to focus on the substance of their views, and not on whether their views may at some point be made public. If this type of material to be released, then Departmental employees would become reticent to share their opinions and circumspect in their willingness to engage in internal discussions with other employees. This lack of candor would seriously impair the Department's ability to foster the forthright internal discussions necessary for efficient and proper decision-making. Certainly, the clarity and strength of the final agency decisions would be diminished if the Department could no longer rely on a robust, pre-decisional and deliberative process where Department employees feel free to share their preliminary assessments and contribute their unique ideas and perspectives.

(74)     Understanding that the OIG report had already officially disclosed certain information reflected in this transcript, OIP carefully segregated this transcript by conducting a thorough, line-by-line review of the portions of the transcript containing ODAG equities, and the corresponding portions of the OIG report, in order to determine exactly what information had already been officially disclosed, and what information had not been disclosed. As a result, OIP

solely withheld information that was predecisional, deliberative, and which had not been officially disclosed. Throughout the relevant portions of the transcript with ODAG equities, OIP regularly divided paragraphs into individual sentences, releasing some and protecting others, and at times even withheld only portions of individual sentences.

### Department of Justice, Executive Office for U.S. Attorneys' Justification for Non-Disclosure Under the FOIA

(75)     The Government is asserting Exemption (b)(5) of the FOIA to withhold information under the attorney client and deliberative process privileges. The Office of General Counsel for the Executive Office for the United States Attorneys (OGC) gave legal advice to the FBI under an attorney client relationship concerning the non-disclosure agreements and as such qualifies for the attorney client privilege. The communications between OGC and the FBI also concerned many exchanges of opinion concerning the non-disclosure agreements prior to making a final decision on them and as such qualifies as deliberative process. These communications met the threshold requirement of Exemption (b)(5) as inter or intra agency communications. The Government segregated and released all non-exempt information.

### SEGREGABILITY

(76)     During the processing of Plaintiff's requests, each responsive page was individually examined to identify non-exempt information that could be reasonably segregated from exempt information for release. All segregable information has been released to Plaintiff. As demonstrated herein, the only information withheld by the FBI consists of information that would trigger reasonably foreseeable harm to one or more interests protected by the cited FOIA exemptions.

(77)     As discussed in ¶ 5, *supra*, of the requests/records being challenged and addressed herein, there were 296 responsive pages identified. Of the 296 pages, 178 pages were Released

in Full ("RIF"), 109 pages were Released in Part ("RIP"), and 9 pages were Withheld in Full

("WIF"). Each of these categories is discussed below to further address segregability.

(a)     Pages RIF. Following the segregability review, RIDS determined, in

some instances after consultation with other agencies, that 178 pages could be released in full

without redactions as there was no foreseeable harm to an interest protected by a FOIA

exemption.

(b)     Pages RIP. RIDS further determined, in some instances after consultation

with other agencies, that 109 pages could be released in part with redactions pursuant to the

specific FOIA exemptions identified on these pages and described herein.  These pages comprise

a mixture of material that could be segregated for release and material that was withheld as

release would trigger foreseeable harm to one or more interests protected by the cited FOIA

exemptions on these pages.

(c)     Pages WIF. Finally, RIDS determined, in some instances after

consultation with other agencies, that 9 pages were required to be withheld in their entirety to

protect exempt information.  RIDS determined that all information on these pages were fully

covered by one or more of the cited FOIA exemptions; therefore, there was no information that

could be reasonably segregated for release without triggering foreseeable harm to one or more of

the cited FOIA exemptions.

## CONSULTATIONS AND REFERRALS

(78)     While processing records responsive to Plaintiff's requests, the FBI identified

documents which originated with or contained other government agencies information and/or

equities.  Specifically, the FBI identified documents which both originated with and/or contained

equities and information of the United States Office of Special Counsel ("OSC"), the United

States Department of Justice, Office of Information Policy ("OIP") and the United States

Department of Justice, Executive Office for U.S. Attorneys ("EOUSA"). Pursuant to established DOJ procedures,[19] the FBI consulted with these three agencies and asked them to make disclosure determinations with respect to their information.

## UNITED STATES OFFICE OF SPECIAL COUNSEL

(79)    The FBI identified five (5) documents Bates-numbered FBI 18-cv-01568 10-12, 28-30, 31-33, 34-36, and 50-54, which either originated with or contained OSC information and/or equities. Following consultations between OSC and FBI, it was determined that certain information contained in these documents was exempt from disclosure pursuant to FOIA Exemptions (b)(6) and (b)(7)(C). The OSC upon request for a declaration to support its' withholdings in these records, advised the FBI the information it previously protected is in the public domain, therefore, the information should be released to Plaintiff herein. Accordingly, the FBI will include the releasable portions of OSC's information in its supplemental release discussed in ¶ 31, *supra*.

## UNITED STATS DEPARTMENT OF JUSTICE, OFFICE OF INFORMATION POLICY

(80)    The FBI identified one (1) document Bates-numbered FBI 18-cv-01568 129-286, which either originated with or contained OIP information and/or equities. Following consultations between OIP and FBI, it was determined that certain information contained in these documents was exempt from disclosure pursuant to FOIA Exemption (b)(5). The FBI protected this information at the request of OIP for the reasons discussed in ¶¶ 71-74, *supra*.

---

[19] See "Referrals, Consultations, and Coordination: Procedures for Processing Records When an Other Agency or Entity Has an Interest in Them," DOJ Office Information Policy Guidance, http://www.justice.gov/oip/blog/foia-guidance-13.

**UNITED STATES DEPARTMENT OF JUSTICE,**
**EXECUTIVE OFFICE FOR UNITED STATE'S ATTORNEYS**

(81)     The FBI identified fifteen (15) documents Bates-numbered FBI 18-cv-01568 8-9,

10-12, 13-15, 16-18, 19-22, 23-26, 27, 34-36, 37, 38-40, 41-43, 44-45, 46-47, 48-49 and 50-54,

which either originated with or contained EOUSA's information and/or equities.  Following

consultations between EOUSA and FBI, it was determined that certain information contained in

these documents was exempt from disclosure pursuant to FOIA Exemptions (b)(5) and (b)6).

The FBI protected this information at the request of EOUSA for the reasons discussed in ¶ 75,

*supra.*

**CONCLUSION**

(82)     The FBI conducted an adequate and reasonable search for responsive records to

Plaintiff's FOIA requests and subject to the FOIA.  The FBI has processed (at times, with the

assistance of other agencies) and released all reasonably segregable information from the

responsive records to Plaintiff, including, its information referred for consultation by OIP.  The

FBI has properly withheld information pursuant to FOIA Exemptions 5, 6, 7(A), 7(C), and 7(E),

5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), and (b)(7)(E).  The FBI carefully examined

the responsive records and determined the FBI's information withheld from Plaintiff, if

disclosed, would reveal privileged information; could reasonably be expected to interfere with an

ongoing investigation, as well as pending and prospective prosecutions; would cause a clearly

unwarranted invasion of personal privacy; could reasonably be expected to constitute an

unwarranted invasion of personal privacy; or would disclose techniques and procedures for law

enforcement investigations or prosecutions the disclosure of which, could reasonably be

expected to risk circumvention of the law.  The FBI determined Plaintiff's request assigned NFP-

91785 was not a proper FOIA request as it was not reasonably described allowing for the FBI to

locate records with a reasonable amount of effort.  Accordingly, the FBI has released all reasonably segregable, non-exempt information to Plaintiff in response to his FOIA requests to the FBI and subject to the FOIA.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A - W attached hereto are true and correct copies.

Executed this _____ day of July, 2019.


DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia