```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
TY CLEVENGER,

                        Plaintiff,                        **MEMORANDUM & ORDER**
                                                          **18 CV 1568 (LB)**
        -against-

U.S. DEPARTMENT OF JUSTICE, FEDERAL BUREAU
OF INVESTIGATION, and NATIONAL SECURITY
AGENCY,

                        Defendants.
----------------------------------------------------------------------X
```
**BLOOM, United States Magistrate Judge:**

Plaintiff, Ty Clevenger, moves for reconsideration of the Court's April 3, 2020 Order, granting defendants' motion for summary judgment and denying plaintiff's motion for partial summary judgment. ECF No. 60. Defendants oppose the request. ECF No. 62. For the following reasons, plaintiff's motion for reconsideration is denied.[1]

## BACKGROUND[2] AND PROCEDURAL HISTORY

Plaintiff commenced this action on March 14, 2018, challenging defendants' responses and redactions to his FOIA requests submitted on March 7, 2017, September 1, 2017, October 1, 2017, and October 10, 2017. See Am. Compl. ¶¶ 7, 9–12, 13, 14. Defendants answered plaintiff's amended complaint on July 11, 2018 and provided plaintiff with their final response to plaintiff's FOIA requests on or around December 12, 2018. Defendants supplemented their response to plaintiff on July 23, 2019. Plaintiff moved for partial summary judgment on September 17, 2019, and defendants cross-moved for summary judgment on October 1, 2019. On April 3, 2020, the Court denied plaintiff's motion for partial summary judgment and granted defendants' motion for

---
[1] The parties consented to a Magistrate Judge for all purposes. See 28 U.S.C. 636(c); ECF No. 20.
[2] The background of this case is set forth in the Court's April 3, 2020 Memorandum and Order. ECF No. 58

1

summary judgment. ECF No. 58. Plaintiff now moves for reconsideration of the Court's April 3, 2020 Memorandum and Order. ECF No. 60.

## DISCUSSION

### I. Standard of Review

The standard for a motion for reconsideration in the Second Circuit "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked[.]" Van Buskirk v. United Grp. of Cos., Inc., 935 F.3d 49, 54 (2d Cir. 2019) (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)); Shalto v. SFL Pizza Corp., No. 19 CV 1687, 2020 WL 3960506, at *1 (E.D.N.Y. July 13, 2020). Reconsideration is generally appropriate if the Court "overlooked controlling decisions or factual matters that were put before it on the underlying motion". Eisemann v. Greene, 204 F.3d 393, 395 (2d Cir. 2000) (per curiam). It is thus well-settled that a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." Salveson v. JP Morgan Chase & Co., 663 F. App'x 71, 75–76 (2d Cir. 2016) (quoting Analytical Survs., Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012)); Shrader, 70 F.3d at 257.

The three grounds for granting a motion for reconsideration are: (1) "intervening change of controlling law"; (2) "the availability of new evidence"; or (3) a "need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Fed. Practice & Procedure, § 4478 at 790); Kelwin Inkwel, LLC v. PNC Merch. Servs. Co., L.P., No. 17 CV 6255, 2019 WL 6134164, at *1 (E.D.N.Y. Nov. 19, 2019). Courts narrowly construe and strictly apply these principles in order to avoid "repetitive arguments on issues that have already been considered fully

by the court." Suffolk Fed. Credit Union v. Cumis Ins. Soc., Inc., 958 F. Supp. 2d 399, 402 (E.D.N.Y. 2013) (citation omitted).

II. The Adequacy of the FBI's Search for Records Concerning Seth Rich

Plaintiff moves the Court to reconsider pages 15–19 of the April 3, 2020 Memorandum and Order, concerning the adequacy of the FBI's search for records concerning Seth Rich.[3] See Pl.'s Mt. for Reconsideration. ECF No. 60 at 1. Plaintiff submits new evidence to the Court, the deposition transcript of Deborah Sines, former Assistant United States Attorney assigned to the Seth Rich case.[4] See ECF No. 60-1, Deposition of Deborah Sines ("Sines Dep."). Plaintiff argues that in light of Ms. Sines' testimony, he demonstrates that the FBI failed to conduct a reasonable search for records concerning Seth Rich. Id. at 2–3. Plaintiff further argues that the Court failed to address the relevance of emails located at the Washington Field Office ("WFO"), and overlooked controlling law, specifically Knight First Amendment Inst. At Columbia Univ. v. U.S. Dep't of Homeland Sec., 407 F. Supp. 3d 311, 324 (S.D.N.Y. 2019).

a. Deborah Sines' Deposition Testimony

Plaintiff posits Ms. Sines' deposition testimony as new evidence that calls into question the adequacy of the FBI's search for records concerning Seth Rich. Plaintiff states that Ms. Sines testified that "[f]ollowing Mr. Rich's death, the FBI investigated attempts to hack into his electronic accounts. Transcript 38–39. The FBI also examined Mr. Rich's laptop computer. Id.;" "She exchanged emails with FBI personnel regarding Seth Rich. Id. at 35;" [and] "She reported her concerns about Seth Rich to Special Counsel Robert Mueller, and she was interviewed by a

---

[3] Plaintiff's September 1, 2017 FOIA request to the FBI was for "all records and correspondence pertaining to Seth Conrad Rich, who was murdered in the District of Columbia on or about July 10, 2016." The September 1, 2017 request is the only request at issue in the instant motion for reconsideration.
[4] Ms. Sines' deposition was taken in Butowsky v. Fokenflik, et al., 4:18 cv 442 (ALM) (E.D. Tex.).

prosecutor and an FBI agent assigned to Mr. Mueller's team. Id. at 30–31." Pl.'s Mt. for Reconsideration at 2.

As discussed in the Court's April 3, 2020 Memorandum and Order, the defending agency bears the burden of establishing the adequacy of its search, and it may satisfy this burden by submitting "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search[.]" Long v. Office of Pers. Mgmt., 692 F.3d 185, 190–91 (2d Cir. 2012) (quoting Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994)). "Under this standard, the relevant question 'is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate' under the particular circumstances of the case." Bloomgarden v. U.S. Dep't of Justice, 10 F. Supp. 3d 146, 152 (D.D.C. 2014) (quoting Weisberg v. U.S. Dep't. of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

"[A]gency affidavits must show that the agency made a good faith effort to search for the requested documents, using methods 'reasonably calculated' to produce documents responsive to the FOIA request." Seife v. U.S. Dep't of State, 298 F. Supp. 3d 592, 607 (S.D.N.Y. 2018) (quoting Garcia v. U.S. Dep't of Justice, Office of Info. & Privacy, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002)). "[A]n agency's search need not be perfect, but rather need only be reasonable." Grand Cent. P'ship v. Cuomo, 166 F.3d 473, 489 (2d Cir. 1999) (citation and internal quotation marks omitted). Thus, "[t]he adequacy of a search is not measured by its results, but rather by its method," and "a search is not inadequate" because it does not identify the entire universe of responsive records. New York Times Co. v. U.S. Dep't of Justice, 756 F.3d 100, 123–124 (2d Cir.), opinion amended on denial of reh'g, 758 F.3d 436 (2d Cir. 2014), supplemented, 762 F.3d 233 (2d Cir. 2014); see also, e.g., Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990) ("A reasonably detailed affidavit, setting forth the search terms and the type of search performed, and

averring that all files likely to contain responsive materials (if such records exist) were searched, is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment."); Nat'l Immigration Project of the Nat. Lawyers Guild v. U.S. Dep't of Homeland Sec., No. 11 Civ. 3235, 2012 WL 6809301, at *4 (S.D.N.Y. Dec. 27, 2012) ("An agency's affidavits or declarations should set forth the search terms and the type of search performed . . . . [and must] supply more than glib government assertions of complete disclosure or retrieval.") (citations and internal quotation marks omitted).

Plaintiff's new evidence, Ms. Sines' deposition testimony, fails to rebut the adequacy of the FBI's search. First, as the Government argues, and plaintiff concedes, these portions of Ms. Sines' deposition testimony regarding concerns she reported to Special Counsel Robert Mueller as well as any subsequent interview with the FBI agent or prosecutor are inapposite as those interactions took place after the Government's initial search in September 2017. See Defs.' Opp. Mem. of Law at 11; Pl.'s Reply Mem. at 4. Fox News Network, LLC v. U.S. Dep't of The Treasury, 739 F. Supp. 2d 515, 536 (S.D.N.Y. 2010) ("courts have consistently held that an agency may limit its FOIA search to records created on or before the date of the commencement of the search."); Edmonds Inst. v. U.S. Dep't of Interior, 383 F. Supp. 2d 105, 111 (D.D.C. 2005) (start of search as cut-off date is reasonable); Defenders of Wildlife v. U.S. Dep't of Interior, 314 F.Supp.2d 1, 12 n. 10 (D.D.C. 2004) (same); see also Physicians for Human Rights v. U.S. Dep't of Def., 675 F. Supp. 2d 149, 164 (D.D.C. 2009) (citing Edmonds with approval). Thus, any records regarding Ms. Sines' concerns as reported to Special Counsel Mueller or any subsequent interview would not have been within the FBI's original search in September 2017.

Plaintiff further cites Ms. Sines' testimony that following Mr. Rich's death, the FBI investigated attempts to hack into his electronic accounts, examining Mr. Rich's laptop computer, and that Ms. Sines exchanged emails with FBI personnel regarding Seth Rich. Pl.'s Mt. for Reconsideration at 2.

The Government argues that plaintiff misstates Ms. Sines' testimony, and that Ms. Sines actually testified that she was "not allowed to answer" and "not allowed to say that the FBI or anybody else looked at Seth's computers." Defs.' Opp. Mem. of Law at 12. Plaintiff refutes the Government's position, stating that in context, "Ms. Sines admitted that she told journalist Michael Isikoff that the FBI examined Mr. Rich's computer."[5] Pl.'s Reply Mem. at 3.

Ms. Sines' testimony regarding whether the FBI examined Seth Rich's computer is admittedly unclear. When asked about the FBI examining Seth Rich's computers, Ms. Sines testified as follows:

> Q: So based on what you have here, is it -- is it -- so you are, in fact, saying that there was at least some investigation of his computer by the FBI; correct?
>
> A: Not in -- how do I put this? I -- this is one of the things I've been instructed I'm not allowed to answer. And I'm trying to find a way -- let me check my affidavit. If it's in the affidavit, maybe the Department would -- hold on.
>
> A: Wow. It looks like -- well, I think paragraphs 12 and 13 answer that. It's just that I did not have permission to tell Michael Isikoff or anyone else who examined Seth Rich's computers.
>
> Q: Okay. But based on your affidavit, you can now say that the FBI examined his computers; is that correct.
>
> A: Just a minute. No. I'm allowed to say I'm aware of no evidence of any contact between Seth or Aaron Rich and WikiLeaks . . . but I'm not allowed to say that the FBI or anybody else looked at Seth's computers.

Sines Dep. at 33:11–25; 34:1–17;

---

[5] Michael Isikoff is the producer of a podcast titled "Conspiracyland." Ms. Sines was interviewed by Isikoff for his podcast. Quotes from Isikoff in Ms. Sines' deposition transcript were taken from that interview. See ECF No. 44.

> Q: Can you say whether or not his work computer was examined by the FBI?
>
> A: I'm not supposed to answer that.
>
> Q: Can you say, though, that his work computer was examined by law enforcement?
>
> A: I'm not supposed to answer that.

Sines Dep. at 35:21–36:5.

> Q: And let's go to the next paragraph on the first page. Isikoff is quoted -- it's in the bottom paragraph -- as it turned out, there was one sliver of truth in the Fox story. The FBI had been examining Seth's computer. Did you tell Mr. Isikoff that?
>
> A: I -- I -- I -- I guess I did. How else would he know it?
>
> Q: Okay. And as far as you know to this day were your statements to Mr. Isikoff in that regard truthful?
>
> A: Yes.

Sines Dep. 37:12.

Ms. Sines' deposition testimony raises as many questions as it may answer. However, it is not the Court's job to assess Ms. Sines' credibility or interpret her testimony in a wholly separate case. Rather, the Court must determine whether the FBI conducted an adequate search designed to reasonably locate documents in response plaintiff's FOIA request.

As outlined in the Court's April 3, 2020 Memorandum and Order, the FBI submitted David M. Hardy's declaration to substantiate the adequacy of its search. See Hardy Decl. The Record Information/Dissemination Section ("RIDS") conducted an index search of CRS for responsive records employing the Universal Index application of Automated Case Support. The FBI conducted a three-way search using the name "Seth Conrad Rich." Hardy Decl. ¶ 19. No responsive main or reference records were located. Id. at ¶ 20. The FBI also searched its Sentinel index using the same original search, and the Sentinel search found no responsive main or record

files. Hardy Decl. ¶ 20. RIDS conducted the CRS index searches because they encompass information about "individuals, organizations, events and other subjects of investigative interest for future retrieval," and given the nature of plaintiff's request, if they existed, such records would be reasonably expected to be located in the CRS. Hardy decl. ¶ 21. Additionally, the FBI contacted the WFO twice, and confirmed that the WFO did not open an investigation into Seth Rich's murder. Hardy Decl. ¶¶ 22–23.

The Hardy Declaration suffices to establish that the search the FBI conducted was "reasonably calculated" to locate responsive documents. Seife, 298 F.Supp.3d at 607. The Hardy Declaration describes the structures of CRS and Sentinel in detail, explains the search terms used, and demonstrates why the records plaintiff requested were reasonably expected to be located in the CRS using the CRS index searches. Additionally, the FBI contacted the WFO twice and confirmed that the WFO did not open an investigation into Seth Rich's murder. See Nolen v. Dep't of Justice, 146 F.Supp.3d 89, 97 (D.D.C. 2015) ("[A] search is generally adequate where the agency has sufficiently explained its search process[.]" (citation omitted)).

Moreover, Mr. Hardy declared that if Computer Analysis Response Team ("CART") records existed, they would have been located through the FBI's CRS searches, Hardy Decl. at 9 n. 6, and Ms. Sines' deposition does not rebut the adequacy of the FBI's search or Mr. Hardy's declaration. Similarly, plaintiff's assertion that Seth Rich's computer was examined does not undermine the FBI's assertions that records that were pertinent or of investigative significance would have been logged into the CRS. As the Court stated in its April 3, 2020 Memorandum and Order, the failure to locate every document in existence or explore every database plaintiff suggests, is not indicative of an unreasonable search as the "standard does not demand perfection, and [] failure to return all responsive documents is not necessarily inconsistent with reasonableness

. . . ." Adamowicz v. Internal Revenue Serv., 552 F. Supp. 2d 355, 361 (S.D.N.Y. 2008). "The adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." Iturralde v. Comptroller of Currency, 315 F.3d 311, 315–16 (D.C. Cir. 2003). Thus, the FBI has established that it conducted an adequate search for records regarding Seth Rich. Plaintiff states that in light of Ms. Sines' deposition "either the FBI's index systems are not nearly so reliable as Mr. Hardy suggests, or the FBI is deliberately hiding records about Seth Rich." Pl.'s Mt. for Reconsideration at 4. Plaintiff is entitled to his beliefs, but his either/or insinuation does not meet the strict standard for reconsideration.[6]

### b. Judicial Watch Emails

Plaintiff's motion also asks the Court to address the relevancy of a Judicial Watch email chain that originated in the WFO that contained the subject line, Seth Rich. The email chain was produced in response to another FOIA requester, who was seeking communications between FBI official Peter Strzok and FBI attorney Lisa Page. See Pl.'s Mt. for Reconsideration at 2; Def.s' Mem. of Law at 13. Plaintiff incorrectly argues that the Court's Memorandum and Order did not address the Judicial Watch emails.[7] The Court contemplated the existence of responsive CART and WFO records that may not have been identified in the FBI's initial search:

> Even if there were responsive CART records or WFO records that were not identified in the FBI's search, the fact that the initial searches did not locate these documents does not support a finding of bad faith, as the FBI is not required to locate every responsive document in existence in order for a search to be considered reasonable. Conti v. U.S. Dep't of Homeland Sec., No. 12 CV 5827, 2014 WL 1274517, at *15 (S.D.N.Y. Mar. 24, 2014) ("[M]any courts have rejected the argument that the discovery of additional documents or later discovery of missing files renders a search unreasonable or conducted in bad faith."); Taggart v. Office of the Inspector Gen., No. 10 Civ. 5447, 2011 WL 13128214 (S.D.N.Y. Sept. 22,

---

[6] Plaintiff may of course pursue other FOIA requests based on the communications disclosed in the Butowsky case. However, the adequacy of the FBI's search herein has been established.
[7] The Court also denied an evidentiary hearing and motion to produce judicial watch emails for *in camera* review on February 12, 2020. See February 12, 2020 ECF Order.

2011), aff'd sub nom. Taggart v. Office of Inspector Gen. (OIG), 530 F. App'x 17 (2d Cir. 2013), at *8 ("[A] reviewing court must consider 'whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant.'") (quoting Grand Cent. P'Ship, 166 F.3d at 489). In any event, other than plaintiff's conclusory statements, there is no record evidence that the FBI has acted in bad faith in this matter.

See ECF No. 58 n. 16.

Plaintiff cites Knight First Amendment Inst. at Columbia Univ., 407 F. Supp. 3d at 324, and argues that the FBI was required to search all locations likely to contain responsive records, not simply where the records are "most likely" to be found. Id. Therefore, plaintiff posits that the Court's Memorandum and Order cannot be reconciled with Knight as the FBI should have searched the WFO for responsive records as this was a place where records were known to exist. Pl.'s Reply Mem. at 4.

Plaintiff's argument ignores that the Hardy declaration states that the FBI contacted the WFO twice, on June 21, 2017 before plaintiff's September 1, 2017 FOIA request, and again on April 4, 2018, and was told that the WFO did not open an investigation into the murder of Seth Rich. Hardy Decl. ¶¶ 22–24. Thus, at the time the FBI commenced their search, the WFO was contacted. As the FBI was told that the WFO did not investigate Seth Rich's murder, the FBI's search was reasonably calculated to lead to responsive records, and the subsequent discovery of records does not undermine the adequacy of the FBI's search. See Dillon v. Dep't of Justice, 102 F. Supp. 3d 272, 285 (D.D.C. 2015) (rejecting plaintiff's argument that the FBI's search was inadequate because it failed to search email systems not indexed in CRS.")

The Court already considered and rejected plaintiff's argument regarding responsive records within the WFO. A motion for reconsideration is an extraordinary remedy. Reconsideration is not granted based on arguments that were already examined and rejected by the Court. Plaintiff fails to introduce facts or controlling authority that would "reasonably be expected

to alter the conclusion reached by the court[.]" Shrader, 70 F.2d at 257. Therefore, the Court denies plaintiff's motion for reconsideration.

SO ORDERED.

                                                      /S/  
                                           LOIS BLOOM  
                                           United States Magistrate Judge

Dated: August 21, 2020  
       Brooklyn, New York